CASE 59—NEGLIGENCE—JANUARY 26.

# Louisville & Nashville R. R. Co. v. Vestal.

### APPEAL FROM KENTON CIRCUIT COURT.

MASTER AND SERVANT—RISKS INCIDENT TO EMPLOYMENT—UNSAFE
TRACK.—It can not be said as a matter of law, that a brakeman
assumes, as one of the risks incident to his employment, the
danger of stepping on a clinker lying at the side of the track
while he is engaged in performing his duty as brakesman, by
which he is thrown against a moving train and thus hurt. In
such a case the question of negligence should be submitted to the
jury.

J. W. BRYAN FOR APPELLANT.

The case should have been taken from the jury. Hullehan v. Green
Bay, Winona & St. Paul R. R. Co., 31 Am. & Eng. R. R. Cases,
222; Ragon v. Toledo A. A. & N. M. Ry. Co., 97 Mich., 265; s. c.
9 Am. R. R. & Corp. Reps, 431; Hayden v. Manufacturing Co.,
29 Conn., 548; De Forest v. Jewett, 88 N. Y., 264; Gibson v.
Railway Co., 63 N. Y., 450; Cooley's Torts, 650; Shearman &
Redfield on Law of Negligence (4th ed.) sec. 185; Finnell v.
Railroad Co., 129 N. Y., 669; s. c. 29 N. E. R., 825; Pennsyl-
vania Co., v. Hankey, 93 Ill., 580; Thompson v. Railroad Co.,
153 Mass., 391; s. c. 26 N. E. R., 1070; Hughes v. Winona & St.
Paul R. R. Co., 27 Minn., 137; Volz v. Chesapeake, &c. R. R. Co.,
95 Ky., 188; Bogenschutz v. Smith, 84 Ky., 338; Kelly, &c., v.
Barber Asphalt Co., 93 Ky., 363; Wood on Master and Servant,
pp. 680-791; Thompson on Neg., vol. 2, p. 1008; C., N. O. & T. P.
Ry. Co. v. Mealer, 50 Fed. Rep., 725.

WILLIAM S. PRYOR, FOR THE APPELLEE.

Where the employe knows, or ought by ordinary diligence to know
of the obstruction, he can not recover for an injury received
therefrom. But, on the other hand, if the facts and circum-
stances are such that the servant can not be charged with this
knowledge, then the liability upon the part of the master whose
negligence caused the injury will arise. Bogenschutz v. Smith,
84 Ky., 338; Shearman & Redfield on Negligence, p. 126, sec.
96; Snow v. Housatonic R. R. Co., 8 Allen, (Mass.), 441; Hulle-

Louisville & Nashville R. R. Co. v. Vestal.

han v. Green Bay, Winona & St. Paul R. R. Co., 68 Wis., 528;
Fish v. Illinois Cent. R. R. Co., 65 Iowa, ——; Kennedy v. Lake
Superior Terminal, 66 N. W. R., ——; Plank v. N. Y. C. R. R.
Co., 60 N. Y., 607; C., N. O. & T. P. Ry. Co., v. Sampson, Admr.,
97 Ky., 65; Hughes v. Winona & St. Paul R. R. Co., 27 Minn., 137.

WILLIAM GOEBEL, on the same side.

The rule invoked by the appellant has been repudiated by the later
decisions in England and in this country. But even if it were
the law, it had no application here because the appellee had no
knowledge of the defect which caused the injury. Hullehan v.
Green Bay, &c., R. R. Co., 58 Wis., 319; C., N. O. & T. P. Ry. Co.
v. Sampson's Admr., 97 Ky., 65; Kane v. Northern Cent. R. Co.,
128 U. S., 91; Hough v. Texas, &c., R. Co., 100 U. S., 213; Patter-
son v. Pittsburg, &c., R. Co., 76 Pa. St., 389; Dwyer v. St. Louis,
&c., R., 52 Fed. Rep., 87; Northern Pacific R. R. Co. v. Everett,
152 U. S., 107; Wallace v. Cent. Vermont R. Co., 138 N. Y., 302;
Plank v. N. Y. Central, &c., R. Co., 60 N. Y., 607; Greenleaf v.
Illinois Cent. R. Co., 29 Iowa, 47; Snow v. Housatonic R. Co., 8
Allen, (Mass.), 441; Hannah v. Conn. R. R. Co., 154 Mass., 529;
Richmond, &c., R. Co. v. Norment, 84 Va., 167.

JUDGE PAYNTER delivered the opinion of the court.

The appellee was employed by the appellant as switch-
man in its yards at Milldale, and on the night of December
13, 1894, whilst engaged at his work, in attempting to
couple two freight cars, his hand was caught between the
bumpers, and so badly mangled that amputation was ren-
dered necessary.

The evidence of the appellee conduces to prove that two
cars were *kicked* back to be coupled with a stationary one,
and as they moved back at a safe rate of speed appellee
jumped from them, moved ahead, and, after seeing the
drawheads were safe, attempted to place himself in proper
position to make the coupling, and to do so was compelled
to place one foot between the rails of the track upon which
the cars were approaching. In doing this he trod upon a
clinker about one foot long and six inches thick, at the

side of an ash pile, which had been placed there by empty-ing ashes from an engine; and it turned, threw him, and in his effort to protect himself from falling under the cars he caught the bumper on one of the cars as they came to-gether, resulting in the injury described.

The accident occurred in the railway yards, where numer-ous trains were broken and made up, and necessarily much switching was done. The appellee had been engaged in the business at that place for a considerable time, and knew that the ash boxes of the engines were emptied on the tracks, and sometimes remained there for some hours; but he knew nothing about the pile of ashes and clinkers being at the place stated, until after his injury occurred.

The principal question in this case is, if appellee trod upon the clinker, as claimed, and the injury resulted there-from, was it one of the risks of the business which he as-sumed? On behalf of the appellant it is insisted the affirm-ative of the proposition is true, and therefore the court should have told the jury that the law is that no recovery could be had in the case, for the reason that it was an as-umed risk.

The doctrine in Kentucky is, where the employe labors with machinery that he knows is defective and dangerous, or could, by the exercise of ordinary care, know the danger attending its use, the employer is not liable for the injury resulting from the carelessness or negligence of providing defective or dangerous machinery, unless he relies upon the employer's promise to repair. In stating the rule the court has not had an occasion to state the well-recognized excep-tion to it. It said in Bogenschutz v. Smith, 84 Ky., 336, [1 S. W., 578]: "The master must use ordinary care in providing proper and safe premises as well as proper mach-inery and material for the servant; but, if, from any cause,

it be not so, and the latter is fully aware of it, and, with-out complaint or assurance to him from the master that it shall be remedied, he voluntarily continues the use of them, then he waives his right, in case of injury, to hold the master responsible, and is without remedy." It is likewise said in that case (page 339) [page 580, S. W.,]: "We do not mean to decide that there may not be cases where the servant has a right to rely upon the judgment of the master as to the safety of the premises or material to be used or that the servant is bound to inform himself as to them. Thus it is, in general, no part of the duty of a brake-man to inspect the track of a railway, or to know that it has been safely constructed. The master may have superior means of knowledge, and the circumstance may authorize the servant to rely on him because of want of equal oppor-tunity. The servant may be ignorant without fault, while the master is negligently so. The law to be applied to a case must, therefore, depend upon the facts shown." There is a qualification of the rule that he who engages in the employment of another for the performance of specified duties, and serves for compensation, takes upon himself the ordinary risks and perils incident to the performance of such services, which exceptions rest upon the princi-ples of justice and public policy, one of which is the obli-gation of the master not to expose the servant, in the performance of his labor, to perils against which he may be guarded by proper diligence upon the part of the master; and to avoid such perils the master is bound to observe the care which prudence and the exigencies of the situa-tion require in furnishing the servant with machinery or other instrumentalities adequately safe for use by the latter. Public policy requires the master, in the selection of the means and agency required in the conduct of his

business, to do so with proper care, and, whilst the servant risks the perils which ordinarly attend or are incident to the business in which he engages, the *master's negligence* in such selection is not one usually or necessarily attendant upon the business. He is not presumed to risk, in contemplation of the law, the *negligence* of the master. This is obviously true, as the servant has nothing to do with the purchase or maintenance of the instrumentalities provided by the master for the conduct of his business. A brakeman has nothing to do in the matter of providing the cars which his duty requires him to couple; neither has he anything to do with the construction of its tracks, roadbed, or their maintenance. It is the duty of the railroad company to keep its tracks in a reasonably safe condition, and that duty is not performed unless it keeps them free from obstructions which might hinder a brakeman in the performance of his duty, so as to render hazardous its performance. The accident occurred at a place used for the purpose of making up trains. The duties of a brakeman require him to move rapidly in separating and uniting cars, and to do which it is necessary for him to place one of his feet on the track, and his body over it. This service was to be performed at night, and with such rapidity that it rendered it impossible for the brakeman to tell with accuracy and certainty the condition of the coupling attachments and the track at the *particular* places where the couplings were to be made.

This and other courts have held when brakemen, while in the discharge of their duties on the top of moving trains, were injured by bridges, although they *knew* their location, and the danger of passing over them, there could be a recovery. Cincinnati, &c., Railway Co. v. Sampson's Adm'r, 97

[ 30 ]

Ky., 65, [30 S. W., 12]; Wallace v. The Central Vermont Railroad Co., 138 N. Y., 302 [33 N. E., 1069].

The courts in those cases were of the opinion that the brakeman did not *assume* the risk incident to the discharge of their duties while passing over the bridges, nor did the courts believe they were guilty of contributory negligence, notwithstanding they knew of the location of the bridges, and the danger of passing over them. Would it be a sound principle to hold, because part of the cars of a railroad company had defective coupling attachments, known to a brakeman, that he, by reason of such knowledge, assumed all risk attending the coupling of cars? Under such a rule a brakeman could not recover damages for an injury received in coupling cars with the defective attachments, and by reason thereof, although he did not at the time know of the defect in the coupling attachments of the *particular cars*, but used all proper care under the situation to discover it, and avoid the injury. Such a principle has not for its foundation either reason or justice. Would it be reasonable to hold that, as such brakeman remained in the service of the company, he was *required to know every car with a defective coupling attachment, and avoid injury thereby*, and that, notwithstanding he used all possible care to discover such defects and avoid injury, he had the misfortune to lose a hand by reason of such defect, he could not recover, because it was a risk which he had assumed? Such an application of the doctrine of assumed risk would lack the quality of humanity, and would be disregardful of public policy, as it would deny redress to one who suffered in consequence of another's wrongful act, and a refusal to punish the wrongdoer in the public interest; that being the only method provided to deter the master from a repetition of the wrong.

Louisville & Nashville R. R. Co. v. Vestal.

If the contention of the appellant be correct, then the appellee was bound to know the exact location of every *clinker* in the yard, and avoid being injured by it. He was required to know the exact location of the clinker in question, although as a matter of fact, he did not know it was in existence; and the jury was authorized from the evidence to reach the conclusion that by ordinary care, under the situation, he might not have discovered it.

Considering the circumstances under which the injury was received, we can not, as matter of law, say the appellee assumed the risk. He had no reasonable means of knowing the precise danger to which he was exposed, and the mere fact that he might have surmised there was a possibility of danger will not justify the court to take the case from the jury. Helehan v. Green Bay, Win. & St. P. R. R. Co., 68 Wis., 528, [32 N. W., 529]; Kennedy v. Lake Superior Terminal & Tr. R. R. Co. (Wis.), 66 N. W., 1137.

The fact that the appellee knew the servants of the appellant were in the habit of dumping ashes on the track would not necessarily cause a reasonably prudent man to believe he was exposing himself to the danger of losing his life or suffering bodily harm. We are of the opinion that the true rule is that a servant can recover for any injury suffered from defects due to the master's fault of which he had notice, if, under all the circumstances, a servant of ordinary prudence, acting with such prudence, would under similar conditions, have continued in the same work under the same risk, but not otherwise. Shearman & Redfield on Negligence, (5th Ed.), section 211.

Counsel for appellant, in support of his position, cites the case of Hughes v. Winona & St. P. R. R. Co., 27 Minn., 137, [6 N. W., 553]. The facts of that case are similar to those of the case at bar. The court held there could be

no recovery, but we are not inclined to follow the doctrine enunciated in that case.

In Snow v. Housatonic R. R. Co., 8 Allen, 446, [85 Am. Dec., 720], it appeared that the plaintiff was injured by getting his foot in a hole in the roadbed of the defendant; that it existed for two months, and the plaintiff was acquainted with it for that length of time, and complained of it to the repairer of the tracks of the defendant's road. The court said: "The place where the accident happened was intended to be used for the purpose of making up trains. It was necessary for the person whose duty it was to unshackle the cars, or to fasten them together, to pass and repass over the space covered with plank between the tracks frequently, and with rapidity, and with his attention in great degree diverted from the surface over which he passed, and directed to the special duty or service of separating and uniting the cars, in order to prepare the trains for transit. The existence of such a defect as the evidence disclosed at the trial, being of a nature to obstruct the plaintiff in passing safely and rapidly over and between the tracks, and to hinder him in the performance of the service in which he was engaged, tended very strongly to show that the defendants had committed a breach of the implied obligation which rested upon them to provide a suitable place in which the plaintiff could perform his duty safely, in the exercise of due and reasonable care, and without incurring a risk which did not come within the scope of his employment. The omission of the defendants was analogous to a failure on their part to have and maintain safe and suitable tracks, switches, or turnouts, or to construct and keep in repair staunch and sufficient bridges. For such failure or omission they would be clearly liable in damages to a person

in their employment who might be injured thereby, according to the principles and authorities already referred to." In Kane v. Northern Central Ry. Co., 128 U. S., 94, [9 Sup. Ct., 16,] the court said: "It is undoubtedly the law that an employe is guilty of contributory negligence, which will defeat his right to recover for injuries sustained in the course of his employment, where such injuries substantially resulted from dangers so obvious and threatening that a reasonably prudent man, under similar circumstances, would have avoided them, if in his power to do so. He will be deemed, in such case, to have assumed the risks involved in such heedless exposure of himself to danger. . . . But in determining whether an employe has recklessly exposed himself to peril, or failed to exercise the care for his personal safety that might reasonably be expected, regard must always be had to the exigencies of his position; in, deed, to all the circumstances of the particular occasion."

In the case of Wallace v. The Central Vt. R. R. Co., 138 N. Y., 302 [33 N. E., 1069], the brakeman was injured by being hit by a bridge while in the discharge of his duties on the top of the moving train. He knew where the bridge was. The court said: "We do not think that one thus situated can, as matter of law, be charged with negligence because he did not take notice of the fact that he was approaching the bridge, and thus know that he was in a place of danger. He was in a place where there was danger that the train might break in two, and he was intent upon the discharge of his duty. It can not be said that a brakeman is, as matter of law, careless, because he does not bear constantly in mind the precise location where the train is and where every bridge is."

It is said in Shearman & Redfield on The Law of Negligence, Vol. 1 (5th Ed.), section 209a: "A servant

who, with actual or constructive notice of a defect, due to the master's fault and of the danger to which he is exposed thereby, and either fully comprehending the risk, or by his own fault failing to do so, 'voluntarily takes his chance,' and continues in work which exposes him to such danger, without reasonable excuse, and without complaint or objection, *where ordinary prudence would require him to refuse the risk,* is held to assume the risk. This rule has been applied to cases in which a servant has suffered injuries from the employment of an incompetent or habitually negligent fellow servant, or from inadequacy in the force employed, from defects in the place of work, materials, or appliances, from the dangerous nature of the work, from unlawful speed of trains, or from failure to maintain safeguards required by law. But those cases in which it has been held, regardless of these limitations, that notice of defects or continuous negligence of the master was a bar to the action, as matter of law, are overruled and obsolete. The latest and best authorities hold that the liability of the master for risks caused by his negligence, which did not exist when the servant accepted the employment, depends upon the 'question of fact whether a servant who works on, appreciating the risk, assumes it voluntarily, or endures it because he feels constrained to.' If he voluntarily continues work, with full notice of the risk, he assumes it, but not so if he acts under coercion."

Section 211, Ibid., reads as follows: "The true rule as nearly as it can be stated, is that a servant can recover for an injury suffered from defects due to the master's fault, of which he had notice, if, under all the circumstances, a servant of ordinary prudence, acting with such prudence, would under similar conditions, have continued the

same work under the same risk; but not otherwise. All the circumstances must be taken into account and not merely the isolated fact of risk. . . ."

Section 211a, Ibid., reads as follows: "As already stated, it is now held by the most conservative authorities that a servant is not deprived of his right to recover for defects caused by his master's negligence, arising or first coming to the servant's notice after he has entered into service, unless he assumes the risk of his own free and unconstrained will. If, therefore he continues to incur the risk of such defects under any kind of necessity or coercion, such as the threat or reasonable fear of dismissal, he does not voluntarily assume the risk, and is not, necessarily, debarred from recovery thereby. It is true that many decisions can be found to the contrary, but, now that the ultra conservative courts of Great Britain and Massachusetts have overruled them, we may be permitted to concur with the Virginia court in condemning such decisions as founded on a 'cruel and inhumane doctrine.'"

Section 212 Ibid., reads as follows: "The test of prudence, in these cases, in analogy to that applied in ordinary cases of contributory fault, is that which a prudent servant, of the same class, using such prudence and judgment as such persons usually possess, but no more, might reasonably be expected to apply to the particular case. . . ."

Section 213, Ibid. reads as follows: "A servant is not debarred from recovery, as matter of law, by his omission to exercise, under peculiar circumstances, the same kind or degree of care which he should exercise under ordinary circumstances. . . . The mere technical fact of the servant's knowledge of a defect is not sufficient to exonerate the master, if, for any

reason, the servant forgets it, and is not in fault in forgetting it, at the precise time when he suffers thereby. In analogy to the principles already stated under the head of 'Contributory Negligence,' the servant's rights are not prejudiced by his excusable forgetfulness of, or failure to observe, a defect or danger, under the influence of sudden alarm or of an urgent necessity for speed, or if his duties are such as necessarily to absorb his whole attention, leaving him no reasonable opportunity to look for defects, or if the light is imperfect. . . . "

Other cases could be cited in support of the conclusion we have reached. Our opinion is that the court did not err in letting the case go to the jury. It was the judge of the facts, and we decline to disturb the judgment, and it is affirmed.