CASE 57—ACTION BY HENRY PFISTERER AGAINST J. H. PETER & Co.
    FOR PERSONAL INJURY.—FEB. 2.

# Pfisterer v. J. H. Peter & Co.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.    REVERSED.

MASTER AND SERVANT—UNSAFE PLACE TO WORK—EQUAL MEANS OF
    KNOWLEDGE—INSTRUCTIONS.

Held:  1. The right of an employe to recover for injuries caused
    by the fall of a platform on which he was standing is not af-
    fected by the fact that he had equal means with his employer
    of knowing that it had not been constructed in a reasonably
    safe manner.
2. In an action for personal injuries to an employe, wherein defend-
    ant's liability depended solely on whether he had provided plain-
    tiff with a safe place to work, an instruction that plaintiff as-

sumed the ordinary risks of his employment, and that, if attended with danger, it was necessary to exercise ordinary care to avoid injury, was inapplicable to the case, though unobjectionable as an abstract statement of law.

GARDNER & MOXLEY, AND CARUTH, CHATTERSON & BLITZ, FOR APPELLANT.

## MASTER AND SERVANT. INJURY TO THE LATTER.

The master and those representing him are required to furnish the servant with reasonably safe appliances or safe place to work—exercising care proportioned to the danger to be apprehended. Where the uncontradicted evidence shows that the master and foreman both noted that the main support of a scaffold leading into a building (adopted by them) was improperly arranged, and made no investigation to see if same was safe, and on account of same the scaffold fell, because insufficient to sustain the unusual weight placed upon it, a clear case of negligence is made out against the master which renders him responsible for injury to an inexperienced servant, acting under orders of the foreman, which can not be excused. In such case no question of fellow servant arises, and an instruction as to "equal means of knowledge" on the part of the servant, and an abstract instruction as to "risks assumed," are irrelevant, misleading and prejudicial.

### AUTHORITIES.

Van Dyke v. Packet Co., 24 Ky. Law Rep., 1285; Champ. Ice Mfg. Co. v. Carter, 21 Ky. Law Rep., 210; Adams Exp. Co. v. Smith, 24 Ky. Law Rep., 1917; Cinti. &c. Ry. Co. v. Palmer, 98 Ky., 282; Ohio Valley R. R. Co. v. McKinley, 17 Ky. Law Rep., 102; L. & N. R. R. Co. v. Vestal, 20 Ky. Law Rep., 1228; L. & N. R. R. Co. v. Richardson, 23 Ky. Law Rep., 2090; L. & N. R. R. Co. v. Ross, 21 Ky. Law Rep., 1730; Ky Cent. R. R. Co. v. Thomas, 79 Ky., 163; R. R. Co. v. Heehl, 12 Bush, 41; Am. & Eng. Ency. of Law, vol. 4, pp. 16-19; Ramsey v. L. & N. R. R. Co., 89 Ky., 99; Am. & Eng. Ency. of Law, vol. 4, p. 59; McBeath v. Rawle, 192 Ills., 626; Ashland, &c. Coal Co. v. Wallace, 19 Ky. Law Rep., 849.

O'NEAL & O'NEAL, ATTORNEYS FOR APPELLEE.

The instructions given by the court defining the respective duties of appellee and appellant have been repeatedly approved

Pfisterer v. J. H. Peter & Co.

by this honored court, and are in form and substance those almost uniformly given in the trials of these cases. The court distinctly tells the jury:

1. That it was the duty of appellee as master to furnish a reasonably safe place.

2. That it was liable to appellant if it failed to furnish a reasonably safe place, and that such fact was known to appellee's agents or servants, or could have been known to them by the exercise of ordinary care, unless it was also known to the appellant or he had equal means of knowing, or the appellant was guilty of contributory negligence.

The instruction in the case of United Laundry Company v. Steele reported in vol. 24, part 2, Ky. Law Rep., 1899, was approved by this honorable court as late as March 1903, and is in all respects similar to the instruction on the same subject in this case. That instruction is as follows:

"The court instructs the jury that if there was a defect in the construction or arrangement of the machine and by reason thereof there was danger attendant upon the operation of the machine which was known, or by the exercise of ordinary care could have been known to the defendant, or its officers or agents or any of them superior in authority to the plaintiff, and said defect and danger were unknown to the plaintiff, or by the exercise of ordinary care could not have been known to her, and she had not equal means of knowledge of said defect and danger with the defendant or its officers or agent, or any of them superior in authority to her and by reason of such defect and danger plaintiff was injured, she could recover unless guilty of contributory neglect."

The instruction in the case at bar was based directly on this latest utterance of the court of appeals on this subject.

In the case of Boegenschutz v. Smith, 84 Ky., 339, this court approves the following statement of the duties of master and servant by Wood on Master and Servant, viz.:

"The servant, in order to recover for defect in the appliances of the business, is called upon to establish two propositions:

1. That the master had notice thereof, or ought to have had.

2. That the servant did not *know* of the defect, and had not equal means of knowing with the master."

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—REVERSING.

This action was brought by the appellant, **Henry Pfisterer**, against the appellees Joseph H. Peter & Co., to recover

damages for a personal injury which resulted to him from the falling of a scaffold on which he was standing while in their service, which it is alleged was caused by the negligence of the defendants in its construction.   There is no dispute as to the facts, which may be stated briefly as follows:

On the 30th of May, 1902, the plaintiff and Lee Balck, laborers in the employ of the defendants, were directed to assist Dietsch, their foreman, in placing a large stone sill, weighing about 1,000 pounds, in the doorway of a school building.   The doorway was immediately over a similar opening into the basement of the building, which was about eight feet deep, and the excavation extended out several feet in front of the building.   Three iron lintels, five inches wide, had been laid side by side across the opening, the ends of which rested upon the walls of the building, and four courses of brick were laid on top of them to bring the wall up to the point where the stone doorsill was to be placed.   The front lintel projected about one and one-half inches beyond the face of the brick wall, leaving about three or three and one-half inches on the wall which was covered by courses of brick.   The brick hod carriers, who had been employed by the brick masons, had used two wooden joists, twenty feet long, two and one-half inches thick, and twelve inches wide, laid one on the top of the other, as a gangway.   One end of these joists rested on the projection of the iron lintel and the other on the ground, spanning the excavation below.   Dietsch, appellee's foreman, took these joists apart and laid three of them side by side, using the projection of the lintel as a rest for the end next to the building, and allowing the other end to rest   on the ground.   Stobs were driven at the end on the ground to prevent their slipping, and a trestle was placed under them to prevent them from swagging, and by his direction this platform was used as a place to stand on while

they were engaged in lifting the stone from the ground below and placing it on the wall. About the time they got the stone sill so that they could place it in position, the iron lintel on which the platform rested turned over, and that end of the platform went down, precipitating the men, stone sill, and four courses of brick into the excavation below. The stone fell upon one of appellant's hands crushing it very badly. Upon the trial the defendant, J. H. Peter testified that he had nothing to do with the placing of the iron lintels or the brickwork; that his contract only covered the stonework on the building; that before sending the plaintiff and his foreman to place the sill he had gone out and looked at the wall to see whether it was ready to receive the sill, when he discovered that the iron lintels had been laid with their flat side down, instead of on edge, as they were usually placed; that, if they had been properly placed by the brickmasons, a dozen men could have stood on the platform, and the lintel would not have turned over. Dietsch also testified that when he went out to place the sill he noticed that the lintels were laid flat. As the lintels were covered by four courses of brick, one standing on the platform could not see how much of the lintel rested on the wall, but by going into the basement and looking up this fact could be easily ascertained. Plaintiff testified—and his testimony is uncontradicted—he had had no experience in building scaffolds, and that he did not discover that the lintels were laid flat, instead of being placed on edge, and that he would not have known that they were not in proper position if his attention had been called to the matter, or that they would have been stronger if placed on edge. There is proof that he assisted in driving the stobs at the end of the joists which rested on the ground by direction of Dietsch. The trial resulted in a verdict and

judgment in favor of the defendants, and upon this appeal it is insisted that the court erred in instructions Nos. 1, 2, and 3 given to the jury over the objection of the plaintiff, and which read as follows:

"(1) Gentlemen of the jury, the court instructs you that it was the duty of the defendants Peter & Co., to furnish a reasonably safe place for the plaintiff to do his work in. Now, if you believe from the evidence that the scaffolding on which plaintiff was working at the time complained of was not in a reasonably safe condition for plaintiff to do his work, and that that fact was known to the defendants, or any of them, or by the exercise of ordinary care they or any of them, or any agent of theirs, superior in authority to plaintiff, or by the exercise of ordinary care they or any of them could have known that it was not in a reasonably safe condition if it was so; and if you further believe from the evidence that such fact, if it did exist, was not known to the plaintiff, or that he did not have equal means of knowing the same with the defendants, and that by reason of it not being in a reasonably safe condition, if it was so, plaintiff was precipitated and injured—then you should find for the plaintiff unless you believe from the evidence that the plaintiff was guilty of contributory negligence, in which event you should find for the defendants. (2) But, gentlemen, if you believe that the scaffolding was in a reasonably safe condition, or if you believe that it was not in a reasonably safe condition, that it was not known to be so, or by the exercise of ordinary care could not have been known to be so, by the defendants, or any of them, or its agents superior in authority to plaintiff, or if you believe, even though it was not in a reasonably safe condition, that such fact was known to the plaintiff, or that he had equal means of knowing the same with the defendants, then you

Pfisterer v. J. H. Peter & Co.

should find for the defendants.    (3) The court further instructs you that when the plaintiff, Pfisterer, entered into the employment of the defendants J. H. Peter & Co., he undertook to assume all risks ordinarily attendant upon such employment, and, if necessarily attended with danger, it was his duty to exercise ordinary care and to avoid being injured."

These instructions are predicated upon the general proposition that if the information of the master and servant as to the place of work are equal, and if both are either without fault or in equal fault, the servant can not recover damages of the master; or in other words, that while the law imposes upon the master the duty of providing the servant a reasonably safe place in which to work, an equal and corresponding duty also rests upon the servant to know that the place is safe.    This was undoubtedly at one time the rule in England, and in some of the American State, notably South Carolina, Maine, Massachusetts, New York, New Jersey, and Mississippi.    But it found no permanent abiding place in the jurisprudence of most of the American States, and has been distinctly repudiated time and again by the federal courts and by this court.    The early case of Bogenschutz v. Smith, 84 Ky., 330, 1 S. W., 578, seems to squint in this direction, and cites some English and American decisions which undoubtedly support the rule contended for.    But the opinion in that case does not approve the doctrine in all cases, as the learned judge who wrote the opinion, in winding up the discussion of the case on this question, says: "We do not mean to decide that there may not be cases where the servant has the right to rely upon the judgment of the master as to the safety of the premises or the material to be used or that the servant is bound to inform himself as to them."    And in numerous subsequent opinions the doctrine has been disaffirmed, and the rule announced that the duty

of furnishing reasonably safe tools, materials, and place to work was primarily on the master, and that the servant was under no duty to discover such defects, and, unless he knew of their existence, or they were patent and obvious to a person of his experience and understanding, that he would not be precluded from recovery. In Louisville & Nashville R. R. Co. v. Foley, 94 Ky., 224, 15 R., 17, 21 S. W., 866, the court said: "The rule requiring an employer to provide reasonably safe and suitable machinery and appliances for the use of employes, and to keep them in reasonable repair while being used, is so just and fair that it has never been called in question by this court. But if an employer may in every case escape liability for an injury to a subordinate employe by reason of the defective machinery or appliances provided for his use merely because the latter does not show he exercised care and diligence to discover the character and condition thereof, the rule would not amount to much as either an incentive to the employer to do his duty or protection to the employe against personal injury. The limit of inquiry in such a case as this is whether, as a matter of fact, the employe did, before exposing himself to danger, know the machinery or implements causing the injury to be defective. The rule of course, does not apply where the examination and inspection is in the line of the employes's duty."

In the Ashland Coal & Iron & Ry. Co. v. Wallace, 101 Ky., 626, 19 R., 849, 42 S. W., 744, 43 S. W., 207, the court said: "The degree of care required of the master and the servant in particular cases is generally different. While each is required to exercise that degree of care in the performance of his duty which a reasonably prudent person would use under like circumstances, the primary duty on the part of the master to use care to furnish a reasonably safe place for the servant is more important than the duty

of the servant to use reasonable care to protect himself. . . . The servant has the right to presume, when directed to work in a particular place, that the master has performed this duty, and to proceed with his work relying upon this presumption." The same doctrine is announced in Louisville & Nashville R. R. Co. v. Vestal, 105 Ky., 461, 20 R., 1288, 49 S. W., 204; Champion, etc., Co. v. Carter (21 R., 210) 51 S. W., 16; Vandyke v. Packet Co., (24 R., 1283) 71 S. W., 441; Crabtree Coal Mining Co. v. Sample's Adm'r (24 R., 1703) 72 S. W., 24; Covington Sawmill & Mfg. Co. v. Clark (25 R., 694) 76 S. W., 348. And in Adams Express Company v. Smith (24 R., 1915) 72 S. W., 752, it was expressly held that the trial court properly refused to instruct the jury that, if the servant had equal means of knowledge with the master, it was not liable, upon the ground that it was the duty of the master to furnish a reasonably safe place to work in, and it was not the duty of the servant to get off of a platform and inspect it from underneath.

In Baltimore & Ohio Railroad Co. v. Baugh, 149 U. S., 386, 13 Sup. Ct., 921, 37 L. Ed., 772, the court said: "A master employing a servant impliedly engages with him that the place in which he is to work and the tools or machinery with which he is to work or by which he is to be surrounded shall be reasonably safe. It is the master who is to provide the place and the tools and the machinery, and when he employs one to enter into his service he impliedly says to him that there is no other danger in the place, the tools, and the machinery than such as is obvious and necessary. Of course, some places of work and some kinds of machinery are more dangerous than others, but that is something which inheres in the thing itself, which is a matter of necessity, and can not be obviated. But within such limits the master who provides the place, the tools, and the

machinery owes a positive duty to his employe in respect thereto. That positive duty does not go to the extent of a guaranty of safety, but it does require that reasonable precautions be taken to secure safety, and it matters not to the employe by whom that safety is secured, or the reasonable precautions therefor taken. He has a right to look to the master for the discharge of that duty; and if the master, instead of discharging it himself, sees fit to have it attended to. by others, that does not change the measure of obligation to the employe, or the latter's right to insist that reasonable precaution shall be taken to secure safety in these respects." The A. & E. En. of Law, volume 20, p. 55 (2d Ed.), admirably epitomizes the law in these words: "Masters owe to their servants the duty of providing them a reasonably safe place in which to work and of maintaining it in a reasonably safe condition during the employment, having regard to the character of the services required and the dangers that a reasonably prudent man would apprehend under the circumstances of each particular case. This is a positive duty which the master owes, and is not one of the perils or risks assumed by a servant in his contract of employment, and the servant is entitled to rely on the assumption that the master has performed the work imposed on him by law of providing a reasonably safe place to work. But if the place is unsafe because of the nature of the work, and the servant suffers injury in consequence thereof, he can not hold the master liable, providing reasonable precautions were taken by the master to avoid injury. The risks of injury from such cause is one of the risks assumed by the servant; or, if the place is obviously unsafe, so as to charge the servant with knowledge thereof, and he nevertheless enters on the work, he assumes the risk." Applying this rule, masters have been held liable for negligence in the construction of scaffolds

Pfisterer v. J. H. Peter & Co.

and platforms erected as a safe place for the use of the servant.    See Maning v. Hogan, 78 N. Y., 615; McNamara v. MacDonough, 102 Cal., 575, 36 Pac., 941; Rice, etc., Malt. Co. v. Paulsen, 51 Ill App., 123.    We are of the opinion that instructions one and two are erroneous in so far as they deny plaintiff the right to recover if he had equal means with the master of knowing that the platform had not been constructed in a reasonably safe manner.

While the third instruction is not objectionable as the abstract statement of the legal proposition, it does not fit the facts of this cause,    The law imposed upon the plaintiff the duty of exercising ordinary care for his own safety, not knowingly to expose himself to unnecessary and obvious risks, when he accepted employment from the defendant; but he did not assume risks that were unknown to him, and which were not necessarily incident to his employment; nor risks which the defendant, by the exercise of ordinary care, could have guarded against.    It is the duty of a servant to obey the reasonable demands of his master, and he had the right to believe that he would not be required to incur risks growing out of the negligent construction by the defendant of the scaffolding upon which he was required to stand in performing the work in obeying the orders of his master.

For errors pointed out, the judgment is reversed, and cause remanded for proceedings consistent with this opinion.