CASE 70—ACTION BY HENRY POULTER'S ADM'R AGAINST THE LOUIS-
VILLE & E. R. R. CO. FOR CAUSING THE DEATH OF PLAINTIFF'S
INTESTATE.—JAN. 26.

# Louisville & E. R. R. Co. v. Poulter's Adm'r.

APPEAL FROM OLDHAM CIRCUIT COURT—G. ALLISON HOLLAND, SPE-
CIAL JUDGE.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.   AFFIRMED.

CHANGE OF VENUE—APPLICATION—HARMLESS ERROR—INFLUENCE OF
ATTORNEY—INJURY TO EMPLOYE—DEFECTIVE SCAFFOLD—NEGLI-
GENCE—CONTRIBUTORY NEGLIGENCE—MASTER AND SERVANT.

1. Error can not be predicated on refusal of application for change of venue made after the appearance term, neither Kentucky Statutes 1903, section 1095, requiring notice to the adverse party, nor section 1096, requiring verified petition accompanied by affidavits, being complied with.

2. No harm from the refusal of change of venue for remarks made in the presence of the petit jury is shown, it not appearing any of such jurors served on the jury in the case.

3. Kentucky Statutes 1903, section 1094, allowing a party change of venue for undue influence of his adversary in the county, does not authorize it for influence of the adversary's counsel.

4. Evidence in an action for injury to an employe from the falling of a scaffold constructed by the employer HELD sufficient to sustain a finding of negligence in construction.

5. An employe sent to do work on a scaffold is not required to inspect it for defects, and, unless knowing thereof, or unless they are patent or obvious to a person of his experience and understanding, he is not precluded from recovery for injury from the negligent construction of the master.

E. R. ATKISSON, O'NEAL & O'NEAL and D. H. FRENCH, ATTOR-
NEYS FOR APPELLANT.

## POINTS AND AUTHORITIES DISCUSSED.

1. The peremptory instruction should have been given, be-
cause no negligence against appellant was established, and for
the further reason that, even if the scaffold was not braced, or
the outrigger had a knot in it, such condition was not, even if
negligent, the proximate cause of the accident. 1 Thompson's
Commentaries on the Law of Negligence, secs. 44, 45; L. & N.
R. R. Co. v. Ewing's Admx., 25 Ky. Law Rep., 1712.

2. The burden was on appellee to establish negligence, and
he failed to do so. Louisville Gas Co. v. K. S. & Co. and cases
cited therein, 105 Ky., 156, 157; L. & N. R. R. Co. v. Wathen,
22 Ky. Law Rep., 82; Hurt v. L. & N. R. R. Co., 25 Ky. Law Rep.,
755; Central Coal & Iron Co. v. Pierce, 26 Ky. Law Rep., 2271;
Kentucky Freestone Co. v. McGhee, 25 Ky. Law Rep., 2212;
Adams Express Co. v. Smith, 24 Ky. Law Rep., 1915; Pfisterer
v. Peter & Co., 25 Ky. Law Rep., 1605; Shemwell v. Owensboro
& N. R. R. Co., 25 Ky. Law Rep., 1671; Wilson v. Chess & Wy-
mond, 25 Ky. Law Rep., 1655; In Hary v. Cumb. Tel. & Tel. Co.,
25 Ky. Law Rep., 2133; C. & O. & T. P. R. Co. v. Cook's Adm'r.,
2152.

3. Poulter was guilty of contributory negligence. L. & N. R.
R. Co. v. Fox, Adm'r, 20 Ky. Law Rep., —; Bush v. Grant, 27 Ky.
Law Rep., 1766; P. & M. R. R. Co. v. Hoehl, 12 Bush, 41; 1. C. R.
R. Co. v. Dick, 91 Ky., 434; L. & N. R. R. Co. v. Cummins, Adm'r,
23 Ky. Law Rep., 681; Cain's Adm'r v. The Ohio Val. Tel. Co., 20
R., 858; L. & N. R. R. Co. v. Ewing's Admx., 25 Ky. Law Rep.,
1712.

4. The verdict is not sustained by sufficient evidence. Sec. 340,
subsec. 6, Civil Code; Hurt v. L. & N. R. R. Co., 25 Ky. Law Rep.,
755; L. & N. R. R. Co. v. Hall, 24 Ky. Law Rep., 2487; L. & E.
M. Co. v. Gilliland, 24 Ky. Law Rep., 2081; L. & N. R. R. Co.
v. McGary's Adm'r, 104 Ky., 509; L. & N. R. R. Co. v. Carter,
23 Ky. Law Rep., 2020.

5. The court erred in giving and refusing instructions. Shan-
non's Adm'r v. L. & N. R. R. Co., 24 Ky. Law Rep., 1083; Central
Coal & Iron Co. v. Peter & Co., 25 Ky. Law Rep., 2271; Pfisterer
v. Peter & Co., 25 Ky. Law Rep., 1609.

6. A continuance and change of venue should have been grant-
ed. Sec. 1103, Ky. Stat; Asher v. Beckner, 19 Ky. Law Rep.,
536, 537; Middlesboro Waterworks v. Neal, 20 Ky. Law Rep.,
1408; Wall v. Muster's Exors., 23 Ky. Law Rep., 556; Newcomb
v. Baskett, 14 Bush, 667.

7. The jury should have been discharged.

8. The·defendant did not obtain a fair trial.

L. W. GATES, R. F. PEAK, S. E. DEHAVEN, ATTORNEYS FOR AP-
PELLEE.

### POINTS AND AUTHORITIES.

1. A peremptory instruction should not have been given.

2. It is for the jury to say whether or not the negligence com-
plained of was the proximate cause of the injury. L. & N. R.
R. Co. v. Ewing's Admx., 78 S. W., 461.

3. There is no evidence in the case at bar that could bring
it within the rule that where the question is one of negligence
or no negligence, a peremptory instruction should be given.

4. Appellant's evidence shows that the accident resulting in
Poulter's death could not have happened according to their
theory.

5. Poulter did not know, and it was not his duty to know of
the defects and dangers in the scaffold, unless such defects
and dangers were obvious and patent. Pfisterer v. Peter, &c.,
25 Ky. Law Rep., 1605; Kentucky Freestone Co. v. McGhee,
25 Ky. Law Rep., 2212, and other cases cited.

6. Appellant company could have known, and it was its duty
to know, of defects and dangers in said scaffold. Harp v. Cumb.
Tel. & Tel. Co., 25 Ky. Law Rep., 2133; Pfisterer v. Peter, &c.,
*supra.*

7. It was the duty of appellant to furnish Poulter with a
reasonably safe place in which to work, and to keep it safe.
Harp v. Cumb. Tel. & Tel. Co., *supra;* Pfisterer v. Peter, &c.,
*supra,* and cases therein cited.

8. The doctrine of equal means of knowledge is not recog-
nized by the courts of this State, and if it were, it would not
be applicable to the facts in the case at bar. Pfisterer v. Peter,
&c., *supra;* L. & N. R. R. Co. v. Vestal, 105 Ky., 461.

9. A change of venue should not have been granted. Secs.
1095, 1096 and 1103, Ky. Stat.

10. Instructions 3 and 5 given by the court were proper. Van-
dyke v. Memphis, &c., Co., 24 Ky. Law Rep., 1284.

11. Appellee's evidence shows all the facts necessary to con-
stitute a clear case of negligence on the part of appellant, and
to entitle appellee to recover.

12. The evidence does not show that Poulter was guilty of
contributory negligence, and even if he was, that is a question
for the jury to determine.

13. The testimony of appellant's witnesses, Fountain and Jen-
nings, is contradictory, inconsistent and can not be reconciled.

OPINION OF THE COURT BY JUDGE SETTLE—AFFIRMING.

The appellee, Andrew M. Sea, as administrator of the estate of Henry Poulter, deceased, obtained in the Oldham circuit court a verdict and judgment against the appellant, the Louisville & Eastern Railroad Company, for $4,000, in damages for the death of his intestate, caused, as alleged in the petition, by the falling of a defectively constructed scaffold used by appellant in erecting a depot at Beard's Station, the intestate being at the time of his death a day laborer and general helper in the work of erecting the depot by employment of appellant. As to the manner of his death it was averred in the petition that while he was assisting other employes of appellant in placing in position for being attached to the depot building a large bracket of 200 pounds' weight, and necessarily standing upon the scaffold for that purpose, that structure broke and fell, thereby precipitating the intestate to the ground, and causing the heavy bracket to fall upon him and fracture his skull, of which he shortly thereafter died. It was further averred in the petition that the scaffold was negligently and improperly constructed by appellant's servants of defective and unsuitable material, and in such a negligent and unskillful manner that when completed it was unfit and dangerous for use by appellant's workmen; and that its defective and dangerous condition was known, or by the exercise of ordinary care could have been known, to appellant and its other servants at work upon the depot, but was unknown, and by the exercise of such care could not have been known, to the intestate. The answer, by specific denial, put in issue the affirmative matter of the petition, pleaded contributory negligence upon the part of the intestate, and that he knew, or by the exercise of ordinary care could have known, of the unsafe condition of the scaffold,

if it was unsafe, before he got upon it. The affirmative mat-ter of the answer was controverted by reply, and upon the issues thus formed the parties were put upon trial and proof, with the result stated in the outset of the opinion.

Numerous errors were assigned by appellant in support of its motion for a new trial, but they were regarded by the lower court as insufficient; consequently a new trial was re-fused. One of the grounds for a new trial was that the court erred in overruling appellant's motion for a change of venue and continuance. The case was tried before a special judge because the regular judge was of counsel for appellee under a contract of employment made before his election. The affi-davit of appellant's agent in Oldham county was filed in support of the motion for a continuance and change of venue, in which it was stated that, owing to the undue influence of appellee's attorney, the regular judge of the court, appellant could not have a fair trial in the "community;" that the attorney mentioned was elected judge of the court in which the action was then pending at the preceding November elec-tion, and had acted as judge of such court during the term then in progress until the day before the calling of this case for trial; and that on the first day of the term the attorney, as judge of the court, in charging the grand jury made to that body, in the hearing of the members of the petit jury sum-moned for the term, certain improper and inflammatory statements in regard to corporations and the di-rectors of corporations, which are set out in the affidavit; and that the members of the petit jury would naturally be unduly influenced by such language from the judge of the court, and thereby prejudiced against appellant in the trial of its case. The answer of appellant had been filed at the previous term of the court, at which term the cause was continued. The motion for a change of venue and

continuance was not therefore made at the appearance term, but at the second term of the court after the institution of the action, and not in fact until the case was called and both the parties had announced ready for trial. Section 1094, Kentucky Statutes, 1903, provides: ". . . A party to any civil proceeding, triable by a jury in a circuit court, may have a change of venue when it appears that owing to the undue influence of his adversary in the county, or to the odium which attends himself, or his cause of action or defense, he can not have a fair trial." Section 1095 provides: "Before an order for a change of venue shall be made, ten days' notice shall be given to the party." Section 1096 provides: "Application for an order for a change of venue must be made by petition, verified by the affidavit of the party, supported by the affidavits of at least two credible housekeepers of the county in which the action is pending. The adverse party may file affidavits controverting the ground relied upon for a change of venue, and the court may hear other evidence for or against the application, and shall exercise a sound discretion in deciding the question." Manifestly, appellant did not comply with the provisions of the several sections of the statute, supra, in the matter of its application for a change of venue, as it neither gave the notice nor filed the verified petition, accompanied by the affidavits of two credible housekeepers of the county, required thereby. In filing the affidavit upon which the motion for a change of venue and continuance was based appellant attempted to avail itself of the privilege accorded by section 1103 of the statute, supra, which provides: "At the appearance term of a civil suit if a party desires a change of venue, he shall state the facts and reasons therefor in an affidavit, which shall be good cause for a continuance, if deemed sufficient by the court, provided the application for a change of venue be made during the

term." Obviously, appellant could not proceed under this section, as it had no application, for the simple and conclusive reason that the motion was not made or affidavit filed at the appearance term, but at a subsequent term, and after both parties had announced themselves ready for trial, as before stated. It is therefore evident that the trial court did not err in overruling the motion. But, if this were not so, it is further evident that the affidavit was insufficient to authorize the order asked of the court. The affidavit set forth certain alleged intemperate remarks made by one of appellee's-attorneys, now and at the time of the trial judge of the Oldham circuit court, in charging the grand jury. If they were uttered as stated in the affidavit, though in the hearing of the petit jury, their very intemperateness doubtless prevented them from having a hurtful effect upon the minds of the hearers. While it is, in effect, stated in the affidavit that the remarks in question were made in the hearing of the petit jury, some of whom would be taken upon the jury to try appellant's case, it does not appear from the record that any of them in fact served upon the jury.

We think the grounds presented by the affidavit insufficient in another respect. They relate alone to the undue influence of appellee's attorney in the "community" as in the way of appellant's securing a fair trial, whereas the statutory ground for a change of venue is the undue influence of the opposite party in the county. We apprehend it will never be considered that the great or unusual influence or skill of counsel for one of the parties to an action will authorize the granting of a change of venue to the other party, that his case may be tried where the influence of his adversary's counsel would be less powerful.

It is insisted for appellant that the court erred in refusing the peremptory instruction asked by its counsel after the

introduction of appellee's evidence. A peremptory instruction would not have been proper unless there was a total failure of proof. According to the evidence, the scaffold by the fall of which appellee's intestate lost his life was constructed under the supervision of appellant's foreman, Wm. Cox, for the use of the workmen engaged in erecting its depot. The scaffold consisted of three upright scantlings six feet west of the depot, with planks called "outriggers," six by three-fourths inches, nailed to each of the upright scantlings and to the building, the planks or outriggers acting as a support for the planks used as a floor of the scaffold. The floor of the scaffold was about seven or eight feet above the ground. The distance between the northwest corner upright of the scaffold to the middle upright was about eight feet, and from the middle upright to the southwest corner was about fourteen feet. While the evidence was conflicting as to the number of braces on the scaffold, there was no conflict as to the fact that the middle outrigger had a knot in it, which was about midway between the end of the outrigger nailed to the middle upright scantling and the end nailed to the door facing of the depot. We think the weight of the evidence showed that the knot greatly weakened the outrigger, which fact, in connection with the further facts that the distance between the south corner upright and the middle upright was fourteen feet, and that the scaffold was defectively braced, caused it to give way and fall. The proof also conduced to prove that the scaffold as a whole was a frail, unsubstantial, and unsafe structure, defective in material and construction, and unequal to the task of supporting the combined weight of the 200-pound bracket, and from two to four workmen who were required to get upon it to attach the bracket to the depot. In brief, we think it sufficiently shown by the evidence that appellant, through its superintendent, Cox, and

other skilled employes then at work upon the depot, was guilty of negligence in thus constructing and maintaining the scaffold, and that it and they knew it to be unsafe and dangerous for use by its employes. Upon the other hand, there was evidence tending to show that the intestate knew or ought to have known of the dangerous construction of the scaffold, as he gave some assistance in erecting it; that is, by the orders of Cox he carried to it from an adjacent point about the depot some of the material used in its construction, and probably gave some other assistance to those by whom it was put up. It appeared, however, from the evidence that he was a plasterer by trade, and that while he had occasionally done a little rough carpentering, he was practically without knowledge of or skill in that trade. It was for the jury to determine from all the evidence whether he was enough of a carpenter to know, after having given some assistance in erecting the scaffold, that it was defective and dangerous. The several workmen of appellant testified that the intestate was told to support and push the end of the 200-pound bracket that was being adjusted to its place on the depot building, in doing which his proper place was on the floor of the scaffold, just behind one of the workmen who had the brace on his shoulder, but that, instead of remaining on the scaffold, the intestate negligently stood upon a ladder leaning against the scaffold and one of its braces; that his weight upon the ladder caused the brace to give way, as it was fastened with but one nail; and that the giving away of the brace so weakened the supports of the scaffold as to cause it to fall. They also testified that in their opinion if the intestate had remained upon the floor of the scaffold it would not have fallen, and that he had been warned by the superintendent not to stand upon the ladder. Upon the other hand, two witnesses introd⸳⸳ ᵒl by appellee—Botts and

Casey—testified to the effect that the intestate was not upon the ladder when the scaffold fell, but upon and near the middle of the floor of the scaffold, where it was his duty to be. Botts did not see the scaffold fall, but in passing a very short time before it fell he saw the position of the intestate as described, and Casey said he saw the scaffold fall; and as, according to his testimony, the intestate was still on the floor of the scaffold, and near the middle, when it fell, it is not probable that he got upon the ladder after Botts passed. At any rate, Casey testified that he saw the intestate when the scaffold fell, and he was then on the scaffold, and not on the ladder. Upon this point there was, therefore, a conflict of testimony, appellant's proof conducing to show the scaffold fell because of the breaking of the brace by the ladder upon which the intestate was standing, and that he was negligent in thus standing; but the testimony of appellee conduced to show that the fall of the scaffold was not due to that cause, but to its defective construction and inherent weakness, and more especially by the breaking of the outrigger containing the knot. If the jury had believed appellant's testimony, they would have found that the intestate's death was due to his own negligence; but, as they found for appellee, they necessarily did so upon the ground that the evidence introduced in his behalf showed that his death was caused by the negligence of appellant's servants. As it can not be said that there was no evidence to support the verdict, the giving of the peremptory instruction asked by appellant would have been improper.

We think the instructions given by the court were unobjectionable, except that in one respect they were unduly favorable to appellant, in that they imposed upon the intestate the duty, equal and corresponding to that of the master, to know that the scaffold was safe before going upon it. Such

is not the law of the case. Upon the contrary, the correct rule is that the duty of furnishing reasonably safe tools and materials and place to work is primarily upon the master, and that the servant is under no duty to discover such defects; and unless he knows of their existence, or they were patent and obvious to a person of his experience and understanding, he will not be precluded from a recovery for injury resulting from the failure of the master to perform the primary duty referred to. This rule has been repeatedly approved by recent decisions of this court. Pfisterer v. Peter & Co., 117 Ky., 501, 78 S. W., 450, 25 Ky. Law Rep., 1605, and cases therein cited. It follows, therefore, that the authorities relied on by counsel for appellant are not in point.

The record does not show the alleged improper statement claimed to have been made by the trial judge to appellant's counsel in the hearing of the jury, or that an exception was taken thereto; consequently we have been unable to consider it. We are also unable to see that any ruling of the court upon the admission or rejection of evidence was prejudicial to the appellant. Nor was there error in the refusal of the court to give the instructions asked by counsel for appellant.

Wherefore the judgment is affirmed.