CASE 16.—ACTION BY W. R. MEADE AS ADM'R OF CHARLES ANDERSON AGAINST THE ASHLAND STEEL CO., FOR DAMAGES FOR CAUSING THE DEATH OF PLAINTIFF'S INTESTATE.—March 15.

## Meade v. Ashland Steel Co.

Appeal from Boyd Circuit Court.

S. G. KINNER, Circuit Judge.

Judgment for defendant. Plaintiff appeals. Reversed.

1. Master and Servant—Injuries to Servant—Evidence.—In an action against a master to recover for injuries causing the death of an employe, through being caught in cogs forming part of a machine pushing steel into shears, evidence of a witness that, while employed in similar work on the same machine, he had on several occasions come very near falling into the cogs by the slipping of the hook used by him to push the steel into the shears at the place where deceased was injured, and that he had reported this fact to defendant's foreman, was admissible.

2. Trial—Question for Jury—Sufficiency of Evidence.—Where there is any evidence, the question is for the jury.

3. Master and Servant—Duty of Master—Safe Place to Work.— It is the duty of the master to furnish his servant a reasonably safe place to work so far as may be done by the exercise of ordinary care.

Meade v. Ashland Steel Co.

4.  Same—Evidence—Presumption.—In an action against a master for injuries resulting in the death of an employe, the presumption was, in the absence of other evidence, that decedent continued at work from the time he was last seen working until the time of the injury.

5.  Same—Negligence—Question for Jury.—Where the master set a servant to work by the side of a revolving shaft conveying unprotected cogs and revolving rolls over which it was the servant's duty to push hot steel bars, on which the hook used to push them was liable to slip, and any slip of the hook might throw the servant on the cogs, it could not be held as a matter of law that there was no evidence that the master was negligent in failing to provide the servant a reasonably safe place to work so far as it might be done by the exercise of ordinary care.

6.  Same—Contributory Negligence—Question for Jury.—In an action against a master for injuries resulting in the death of an employe, the question of contributory negligence held, under the evidence one for the jury.

7.  Same—Assumption of Risk.—In an action against a master for injuries resulting in the death of an employe, through being caught in the cogs of a machine used for carrying steel to shears, the question whether a man unaccustomed to work of that sort, being placed at the work in the night-time, would, by ordinary care, perceive the danger in which he was placed, and hence would assume the risk, was a question for the jury.

8.  Same—Knowledge of Defect in Appliances.—Under the rule that a servant, where inspection is not in the line of his duty, may recover unless he knew the danger, or it was so manifest that by ordinary care in the course of his duty he should have known it, it is not sufficient that the servant knew of the defect in the appliances but he must have known or understood the danger, or it must have been such as by ordinary care would have been known to a person of ordinary prudence, situated as he was.

9.  Same.—The rule that, if the servant be of mature years and of ordinary intelligence and experience, he is presumed to know and comprehend obvious dangers, does not apply where the circumstances repel the inference that he assumed the risk.

10.  Same—Questions for Jury.—Though the question of assumption of risk by a servant is often for the court, yet, where the inference to be drawn from the facts is one on which men may reasonably differ, it must be left to the jury.

11.  Same.—A servant continuing to work without objection, where

he has a reasonable time to make objection after notice of the dangerous character of the machine and before his injury, assumes the risk.

12.    Same—Contributory Negligence.—A servant continuing to work where the danger from machinery is so great that a person of ordinary prudence, situated as he was, would not in the exercise of ordinary care have continued to work is guilty of contributory negligence.

JAMES A. SCOTT, R. S. DINKEL and W. C. MARSHALL, attorneys for appellant.

STATEMENT.

1.    The appellants intestate, Charles Anderson, was injured by having his leg caught in some cogs in a revolving shaft from which he died immediately thereafter. He was employed at the time in the appellee's rolling mill, a large establishment consisting of many different departments and employing several hundred hands. At the time of said injury he was engaged in pushing against a piece of steel, which was carried up upon rollers under a knife, which cut it off. Some of these rollers were "dead"— that is they did not unite or engage with the shaft, and therefore didn't turn. This made it a great deal harder on the "shear men" to push up the steel, and greatly increased the danger.

2.    There was no light at this place, and it being in the nighttime, decedent, of course, didn't see the danger from the revolving cogs. Just how he was caught in the cogs, no body seems to know exactly. Therefore the presumption is, that he was using ordinary care for his own safety.

3.    It is contended for the appellant, that whether the place was reasonably safe, or whether the machinery and appliances were in a reasonably safe condition for the intestate's use, or whether he had knowledge of their condition, if defective, and therefore assumed all risks of danger, was a question for the jury. And the court erred in awarding a peremptory instruction to the jury to find for the defendant.

AUTHORITIES CITED.

Gisson v. Schwabacher, et al., 34 Pacific Rep., 104; Nels Woutilla v. Duluth Lumber Co., 37 Minnesota Reports, 153; Ralph L. Russell v. M. & St. L. Ry. Co., 32 Minn. Rep., 230; Cook v. St. P. M. & M. Ry. Co., 34 Minn. Rep., 45; Nadau v. White River Lumber Co.; 76 Wis. Rep., 126; James Wheeler v. Wason

Meade. v. Ashland. Steel Co..

Mfg. Co., 135 Mass. Rep., 294; Pantzar v. The Tilly Foster I. M. Co.; 99th N. Y. Rep., 368; Gain v. Smith, 89th N. Y. Rep., 378 (44 Sick); A. C. & I. Ry. Co. v. Wallace, 19 Ky. Law Rep., 849; Lawrence v. Hagemeyer & Co., 93 Ky., 591; Lasch by &c., v. Stratton, &c., 101 Ky., 672-703; Thorpe v. Missouri Pacific Ry. Co., 2 S. W. Rep., 3; Standard Oil Co. v. Eiler, &c., 22 Ky. Law Rep., 1641; Wake & Co. v. Price, 22 Ky. Law Rep., 696; Vandyke v. M. N. O. & C. Packet Co:, 24 Ky. Law Rep., 1283; Crabtree Coal Mining Co. v. Sample's Adm'r, 24 Ky. Law Rep., 1703; Angel v. Jellico Coal Mining Co., 25 Ky. Law Rep., 108; Pflisterer v. Peter & Co., 25 Ky. Law Rep., 1605; Ky. Freestone Co. v. McGee, 25 Ky. Law Rep., 2211; I. C. R. R. Co. v. Langan, 25 Ky. Law Rep., 500; Shanks v. Citizen's E. Light Co.; 25 Ky. Law Rep., 811; Henderson Tobacco Works v. Wheeler, 25 Ky. Law Rep., 495; Dryden v. Pogue Distilling Co., 26 Ky. Law Rep., 528; Lcu. Hotel Co. v. Kaltenbrun, 26 Ky. Law Rep., 208; James v. Ames, &c., 26 Ky. Law Rep., 498; I. C. R. R. Co. v. Keebler, 27 Ky. Law Rep., 305; The Lou. & Eastern R. R. Co. v. Poulter's Adm'r, 27 Ky. Law Rep., 193; The Geo. Weidemann Brewing Co. v. Wood, 27 Ky. Law Rep., 1012; Ross-Paris Co. v. Brown, 28 Ky. Law Rep., 813-16; Mergenthaler-Horton Basket Co. v. Taylor, 28 Ky. Law Rep., 923.

PROCTOR KNOTT MALIN and HAGER & STEWART for appellees.

## POINTS AND AUTHORITIES.

1. Failure to prove appointment and authority of the appellant administrator against the denial by defendant of such appointment, is fatal upon this appeal. (Sub-section 3, section 128, Civil Code.)

2. Under the evidence the court and jury could do no more than guess the cause of the accident. All text and case authorities require of plaintiff to show something more than a probability of defendant's negligence and that there must be some element of moral certainty and exclusion of reasonable doubt. (Wintuska's case, 14 Ky. Law Rep., 579: Johnson's Adm'r v. E. T. V. & G. Ry. Co., 17 Ky. Law Rep., 67; L. & N. R. R. Co. v. Wathen, 22 Ky. Law Rep., 82; Hughes v. Cincinnati, &c., R. Co., 91 Ky., 526; Louisville Gas Co. v. Kaufman, Straus & Co., 105 Ky., 156; Grant v. Railroad Co., 133 N. Y., 658; Hurt v. L. & N. R. R. Co., 25 Ky. Law Rep., 755, 116 Ky., 545; M. K. & T. Ry. v. Greenwood, 89 S. W., 810—Jan. 10, 1906; Sorenson v. Menasha & Pulp Co., (Wis.) 14 N. W., 466; Railway v. Sparrow (Va.) 37 S. E., 302.)

3. The doctrine "res ipsa loquitur" cannot be invoked in aid

of the absence of proof. (N. P. Ry. Co. v. Dixon, 139 Fed., 740; Chicago & N. W. Ry. Co. v. O'Brien, 132 Fed., 593, 596, 598, C. C. A., 421; Westland v. Gold Mines Co., 41 C. C. A., 199, 200, 101 Fed., 65; Texas & Pac. Ry. Co. v. Barrett, 166 U. S., 617, 17 Sup. Ct., 707, 41 L. Ed., 1136; Patton v. Texas & Pac. Ry. Co., 179 U. S., 658, 21 Sup. Ct., 275, 45 L. Ed., 361; O'Connor v. Ry. Co., 83 Iowa, 105, 48 N. W., 1002; Brownfield v. Ry. Co., 107 Iowa, 254, 77 N. W., 1038; Brymer v. Ry. Co., 90 Cal., 497, 27 Pac., 371; Huff v. Austin, 46 Ohio St., 386, 21 N. E., 864, 15 Am. St. Rep., 613; Wormell v. Railroad Co., 79 Me., 397, 10 Atl., 49, 1 Am. St. Rep., 321; Grant v. Railroad Co., 133 N. Y., 659, 31 N. E., 220.)

4. There is failure to prove negligence as proximate cause of the death sued for. The danger of the working place, if any, was within the ordinary risk and hazard incident to the work and assumed by the deceased.

(a) An experienced employe. (Wilson v. Chess & Wymond Co., 25 Ky. Law Rep., 1655; McCormick Harvesting Machine Co. v. Liter, 23 Ky. Law Rep., 2154; Ray v. Jeffries, 86 Ky., 368; Jones v. L. & N. R. R. Co., 95 Ky., 579; Kelly, &c., v. Barber Asphalt Co., 93 Ky., 363; Carey v. Samuels Co. (Sept., 1905) 88 S. W., 1052; Norton v. L. & N. R. R. Co., 16 Ky. Law Rep., 846; Bogenschutz v. Smith, 84 Ky., 330.)

(b) If the source of danger was exposed cog wheels, it was palpable. Failure to enclose cog wheels is not per se negligence on the part of the employer. (Schroeder v. Car Co., 56 Mich., 132; Sanborn v. Railroad Co., 35 Kan., 292; Townsend v. Langles, 41 Fed., 919; Bailey's Master and Servant, 1st Ed., pp. 151-153; Sullivan v. India Manufacturing Co., 113 Mass., 396; Way v. Railway Co., 40 Iowa, 341; Shaw v. Sheldon, 103 N. Y., 667 9 N. E., 183; Hickey v. Taaffe, 105 N. Y., 26, 12 N. E., 286; Barbo v. Bassett, 35 Minn., 485, 29 N. W., 198; Tuttle v. Railroad Co., 122 U. S., 195; Burger v. St. Paul, &c., 39 Minn., 78; Collins v. Ladonia Car Co., — N. H., 196, 63 N. J. L., 609; Hayden v. West Superior Lumber Co., 91 Wis., 208; Olsen v. Dougherty Lumber Co, 102 Wis., 264; Sladky v. Morinett Lumber Co., 107 Wis., 250.)

(c) The only rational theory of the accident is that it resulted from a voluntary exposure by the deceased to the danger of being upon or stepping across the table, an act of known and imminent danger, selection of which was a contributory cause of injury, for which the master is not liable.

OPINION OF THE COURT BY JUDGE HOBSON--Reversing.

Charles Anderson lost his life on October 7, 1901, while in the employ of the Ashland Steel Company. This suit was filed by his administrator to recover for his death. At the conclusion of the evidence for the plaintiff the court peremptorily instructed the jury to find for the defendant, and, his petition having been dismissed, the plaintiff appeals.

Although the deceased had been in the employment of the steel company for a number of years, he had not worked at the place where he was killed until the night he was killed. He went to work there about dark, and was killed during the night. He was at the time operating what is called the "shears." The hot metal is brought from the furnace by means of a crane, and is passed through rolls until it is rolled to the desired size, and then it passed over the rolls until it reaches the shears, and there it is cut into billets of the desired length; the shears being a knife operated by steam to cut the metal in two when brought down upon it. Anderson and another man were operating the shears. The rolls extended back from the shears about 75 feet, and a line of shafting ran by the side of the rolls upon which were cogs that turned them. Anderson's post was a few feet from the shears, and it was his duty to keep the metal going through the shears. When the piece of metal was long and the rolls were working all right, the rolls carried the metal up to the shears, but, when the piece became shorter, they had to force it up by hooks, and this was especially necessary when the rolls did not work. Anderson's post was right

by the shafting. One witness testifies that he looked around and that Anderson and the other man working with him were pushing with their hooks on a piece of metal about 10 billets long; that he looked in another direction, and, hearing a noise he looked around again toward Anderson and saw him pushing himself back from the table; that he went to him and his leg was ground up in the cogs. At this time the piece of metal on the table was two or three billets long. From these injuries Anderson died very soon. One or perhaps more of the rolls were dead—that is, they were not turning—and this required the men with the hooks to push much harder on the steel than they would have been required to do if the rolls were in good order. The attention of the foreman had been called to the rolls being out of order, and he had said he would fix them when he had time. There was no shield or protection about the cogs, and when a man was pushing with a hook, if his hook slipped on the hot steel, he was liable to go either into the cogs or over on the table, where the hot metal was. The attention of the foreman had been called to the fact that there was danger in running the shears with these cogs unprotected, and he said that he would remedy it; but this had not been done. A witness who had worked at the shears testified, not only to the danger from the cogs when the hook would slip, but also that the hook was very liable to slip on the hot metal when much pressure had to be used. The plaintiff offered to prove by this witness that he had come, on several occasions, very near falling into the cogs by the slipping of his hook while pushing steel into the shears at the place where the deceased was injured, and that he had reported this fact to the foreman. The evidence should have been admitted,

as it brought home to the defendant knowledge of the danger, and served to show that the statements of the witness were not barely theoretical, but that he knew by experience the danger of getting into the cogs. To illustrate: It is argued for the appellee that a man could not get into these cogs while pushing with the hook, and this proof would throw light on the imminence of the danger in which Anderson was placed. The light was over beyond the shears, and the place at which he worked was not sufficiently lighted except by the hot metal, and as the metal cooled off and became short he had less light from it.

The rule is that, if there is any evidence, the question is for the jury. There was some evidence of negligence on the part of the master by reason of which Anderson lost his life we think if the evidence offered by him is accepted as true. The witnesses examined on his behalf testified that there would have been no trouble in putting a shield over these cogs so as to protect the workman from being thrown into them when his hook slipped on the steel. That his hook was liable to slip, and that he was liable to fall into the cogs whenever it slipped, must be admitted if the evidence for the plaintiff is true. It is incumbent upon the master to furnish his servant a reasonably safe place to work, so far as may be done by the exercise of ordinary care. That the place where Anderson was working was unsafe must be conceded from the evidence introduced on the plaintiff's behalf. The source of the danger was the unprotected cogs, and when found his leg was ground up in the cogs; so that is it unquestioned that the loss of his life was due to the master's failure to furnish him a reasonably safe place to work. The fact that there was bad light and that some of the rolls were dead increased

the danger, as Anderson had less opportunity in the dark to keep out of the way of the cogs when he could not see, and he was required to use more force when the rolls did not work, and thus was in more danger of being thrown upon the cogs; but the source of danger, after, all was the unprotected cogs. The witnesses testify that they had seen Anderson there at his work all night. He was seen working away a few seconds before he was hurt when the piece of metal was 10 billets long, and when he was hurt it was on the table and about two or three billets long. In the absence of any other evidence, it must be presumed that he continued at work from the time he was last seen until he was caught in the cogs. It cannot be held as a matter of law that there is no evidence that the master has been negligent in failing to provide the servant a reasonably safe place to work, so far as it may be done by the exercise of ordinary care, when it sets him to work by the side of a revolving shaft conveying unprotected cogs, and the servant's business is to push hot steel bars with a hook on which the hook is likely to slip, and any slip of the hook may throw the servant upon the cogs. While it is true that a servant of experience and agility might by unusual care avoid being hurt, one who was ignorant of the danger, especially in the dark, when any slip of the hook might cause him to get into the cogs, would be in constant peril.

The question of contributory negligence is for the jury under the evidence. Anderson had never worked at this place until put there that night. He might not reasonably understand the danger when placed in a new employment at night; at least it is a question for the jury whether he knew the danger and assumed the risk. Whether a man unaccustomed to work of

this sort being placed at the work in the night would by ordinary care perceive the danger in which he was placed is not to be decided as a question of law by the court. The servant here had been at the post such a short time, and that at night, that the question is for the jury. In those jurisdictions, where the burden is on the defendant to prove contributory negligence, the burden is also upon the defendant to prove that the servant assumed the risk. 1 Thompson on Negligence, section 368. The servant, where inspection is not in the line of his duty, may recover unless he knew the danger, or it was so manifest that by ordinary care in the course of his duty he should have known it. Pfisterer v. Peter, 25 Ky. Law Rep. 1605, 78 S. W. 450, 117 Ky. 501; Wilson v. Chess & Wymond Co., 25 Ky. Law Rep. 1655, 78 S. W. 453, 117 Ky. 567; Andricus' Adm'r v. Coal Co., 121 Ky. 724, 90 S. W. 233, 28 Ky. Law Rep. 704. It is not sufficient that the servant knew of the defect in the appliances. He must have known or understood the danger, or it must have been such as by ordinary care would have been known to a person of ordinary prudence situated as he was. Bayly on Master's Liability, p. 184; 1 Shearman & Redfield on Negligence, section 214; Ross-Paris Co. v. Brown, 121 Ky. 821, 90 S. W. 568, 28 Ky. Law Rep. 813; Rolseth v. Smith, 35 N. W. 565, 38 Minn. 14, 8 Am. St. Rep. 637; Fitzgerald v. Connecticut Paper Co. 29 N. E. 464, 155 Mass. 155, 31 Am. St. Rep. 537; Christianson v. N. W. C. Co., 85 N. W. 826, 83 Minn. 25, 85 Am. St. Rep. 440. In Cooley on Torts (2 Ed.) p. 1135, it is said: "Where a servant is ordered to work in a particular place, or with a particular machine or appliance, or to do a particular piece of work, he has a right to assume that there are no unusual or concealed dan-

gers or hazards connected with the work, and, if such exist and he has not been warned or instructed in regard to them, and is ignorant of their existence, and is injured in consequence, he may recover. If the servant be of mature years, and of ordinary intelligence and experience, he is presumed to know and comprehend obvious dangers." This rule, however, does not apply where the circumstances repel the inference that the servant assumed the risk. Thus an instruction as to the risk being assumed was held properly refused in Louisville, etc., R. R. Co. v. Kelly, 63 Fed. 407, 11 C. C. A. 260. The court said: "If the defendant in error knew that the deadwoods were out of repair, he must, in all probability, have acquired the knowledge on the spot; and, consistently with the terms of the instruction, his supposed knowledge of the condition of the track and of the incompetency of the fireman as an engineer may have come to him so recently as to have afforded him no opportunity to make objection or complaint. Besides, even if he had the supposed knowledge, it was a question for the jury whether or not, under the circumstances, he ought to have attempted to make the coupling, and in so doing was himself negligent, or to be considered as having voluntarily assumed the risk of his act." In a similar case the United States Supreme Court. approving a like ruling of the circuit court, said: "A suitable judgment on that question can only be reached by carefully weighing the probable consequences of both courses of conduct, and it might well happen that even at the risk of injury to himeslf, occasioned by the unskillfulness of his co-employe, the plaintiff might still reasonably be regarded as under a duty not suddenly and instantly to refuse to continue in the conduct of the business of his principal. Many

cases might be conceived in which the latter .course might even increase the danger to the plaintiff himself and entail great injury and loss to others." Northern Pacific Ry. Co. v. Mares, 123 U. S. 710, 8 Sup. Ct. 321, 31 L. Ed. 296. See, also, 1 Shearman & Redfield on Negligence, section 211.

Often the question of assumption of risk is for the court; but, where the inference to be drawn from the facts is one on which men may reasonably differ, it must be left to the jury. Manufacturing establishments could not be carried on at all if all servants quit work immediately when they found anything wrong. The contract of service, like other contracts, must receive a reasonable construction. On the facts shown it will be a question for the jury whether the deceased knew the danger or by the exercise of ordinary care in the line of his duty should have known it; and, if so, whether he had a reasonable time to make objection after he had notice of the danger and before his injury, or the danger was so great that a person of ordinary prudence situated as he was, would not in the exercise of ordinary care have continued at the work. If the deceased had a reasonable time to make objection, after he had notice of the danger and before his injury, he assumed the risk when he continued to work without objection, or if the danger was so great that a person of ordinary prudence situated as he was would not, in the exercise of ordinary care, have continued to work, he was guilty of contributory negligence; and in either case the plaintiff cannot recover.

Judgment reversed, and cause remanded for a new trial.