## Palmer Transfer Company v. Long.

(Decided Sept. 30, 1910.)

### Appeal from McCracken Circuit Court.

1. Personal Injuries—Running Away of Carriage—Injury of Passenger—Damages Recoverable.—On the trial of this case in which a lady passenger recovered $1,000.00 damages against a transfer company for injuries sustained by her by the running away of the horses in a carriage in which she was riding, held that whether she was thrown out or jumped out, she was, under the facts shown, entitled to damages.

2. Unsafe Team—Knowledge of Driver—Presumption.—Unless the driver knew that his horses were gentle and would stand without being held, it was his duty to have hold of the reins or to have hitched them. There being no evidence that the horses were gentle, the presumption is they were not.

3. Excessive Damages—Finding of Jury—Compensation.—Damages in a case like this, it is practically impossible to estimate the sum that should be awarded as compensation, and so where the plaintiff has suffered injury and the award is not so large as to appear excessive at first blush, or to be the result of passion or prejudice on the part of the jury, this court will not interfere with the finding.

J. D. MOCQUOT for appellant.

WEBB & WEAKS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant company is engaged in the transportation for hire of freight and passengers from one point to another in the city of Paducah, and in July, 1909, the appellee, Mrs. Long, took passage in one of the company's carriages for the purpose of going from the residence at which she was stopping to the railroad depot. On her way to the depot the horses attached to the carriage in which she was riding ran off and she was thrown from the carriage to the ground and severely injured. To recover damages for the injuries thus sustained, she brought this action.

The answer of the company was a traverse and plea of contributory negligence. Upon a trial before a jury the appellee was awarded damages in the sum of one thousand dollars. A reversal is asked for two reasons: First, because the verdict is contrary to the evidence, and second, because the damages are excessive.

The appellee testified that while on the way to the depot the driver stopped to take in other passengers, and that when he stopped for this purpose he went away from the carriage, leaving the horses unattended, and they became frightened and ran away. That after they had run some distance, they made a sudden lunge, and she was thrown from the carriage to the street, injuring her very seriously. She further testified that previous to receiving the injuries complained of, she had always been a healthy woman, doing her own housework; that she was confined to her bed some three weeks on account of the injuries and was suffering from them at the time of the trial in March, 1910, and even then was unable to do her usual work without discomfort and pain. There was evidence that she was bruised on the hip and back, as well as internally; and her family physician testified in March, 1910, that the pains she complained of were usually brought about by strain or injury to the lower abdominal muscles and the support of the bladder and womb. That although he did not consider her injuries permanent, it would yet be some time before the pain she complained of ceased. A Mrs. Carroll, a witness for the appellant company, at whose house the horses were standing immediately before they ran off, testified that the driver, who did not have the reins in his hands when the horses started to run, caught hold of them after they started and attempted to control the horses, but could not. That she saw the appellee fall from the carriage after the horses had run some distance, and went

as quick as possible to appellee, who told her that she did not think she was hurt, and that she had jumped out. The driver said that when he stopped, Mrs. Eisman and little girl got in the carriage and that as he was in the act of putting a suit case in or on the carriage one of the horses kicked him. That he did not have hold of the reins, and the horses ran some distance before he was able to get the reins and stop them, and that notwithstanding his warning to the occupants of the carriage not to try to get out, Mrs. Long did jump out. Mr. Eisman testified that after putting his wife and little girl in the carriage, he was preparing to get in himself, when the horses started; that the driver, who was standing by the carriage, attempted to pick up the reins that had fallen to the ground, when one of the horses kicked at him, and immediately started to run. Neither Mrs. Eisman nor her daughter who were in the carriage when the horses ran off and at the time Mrs. Long was thrown or jumped out, testified, but they remained in the carriage and were not injured.

What caused the horses to run off does not appear; but as one of them kicked at the driver when he attempted to get the reins preparatory to starting, and they immediately ran off, it is safe to infer that they were not ordinarily safe or gentle horses.

Upon the point as to whether Mrs. Long was thrown out or jumped out, we have one witness saying she was thrown out and two that she jumped out, but it is not, under the facts of this case, material whether she jumped out or was thrown out; in either state of case she was entitled to recover.

We also think the jury was authorized to find that the driver was negligent in not keeping hold of the reins, or hitching his horses. Unless he knew that the horses were gentle and would stand without being held, it was his duty to have his hands on the reins so that he could control them, or to have hitched them. There is no evidence that the horses were gentle or safe, and the presumption from their conduct is that they were not.

In respect to the amount of damages awarded, we have often said, in cases like this, that it is practically impossible to estimate with any reasonable degree of certainty the sum that should be awarded as compensation. And so where it appears that the complaining party has suffered injury and the award is not so large as to appear excessive at first blush, or, to be the result of passion or

prejudice on the part of the jury, it is the well settled practice of this court not to interfere with the finding. The amount does not at first blush appear excessive; nor is there any suggestion that the jury was influenced by passion or prejudice in awarding it.

The judgment of the lower court is affirmed.