## Le Moyne, et al. v. Meadors.

(Decided January 15, 1914.)

### Appeal from Whitley Circuit Court.

1. Adverse Possession.—Where the true owner is not in actual possession under his paper title, an adverse claimant may enter and extend by marked lines, his actual occupancy.

2. Trial—Instructions—Failure to Request.—Where a party fails to request such instruction it is not error for the court to fail to define actual and adverse possession, an instruction having been given in which said terms were used.

3. Evidence—Competency of Witnesses.—In an action for the recovery of land, the defendant claiming ownership thereof by adverse possession of himself and his father under whom defendant claims, the brothers of defendant may testify concerning the acts, statements and claims of their deceased father, notwithstanding the fact that if defendant should lose the land in controversy said brothers might be liable for contribution to defendant to make his share of the father's estate equal to theirs.

4. Adverse Possession—Boundaries—Question for Jury.—Where the evidence in regard to the marking of the lines bounding the lands of the adverse claimant is conflicting, the jury must pass thereon.

H. C. GILLIS for appellants.

STEPHENS & STEELY and R. S. ROSE for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

Appellants, John V. Le Moyne and others, on August 26, 1911, sued Hampton Meadors to recover the possession of about one hundred acres of land in Whitley County. Meadors denied the claim of ownership asserted by the plaintiffs, and alleged ownership in himself by adverse possession. A trial by a jury resulted in a verdict for defendant. The plaintiffs appeal.

Appellee claims under his father, James Meadors, who died in 1900. James Meadors owned other lands than the tract in controversy and adjoining same, and in the partition of his real estate the land in dispute was allotted to appellee.

The proof for defendant in substance was that James Meadors marked off a boundary of land in the year 1871, the land here in controversy being a part of said boundary; that he built a cabin thereon, and commenced to clear up, fence and cultivate the same, extending this clearing and fencing from time to time until from thirty to fifty acres of the boundary in dispute had been so

cleared and fenced; the last of the clearing having been done some sixteen to eighteen years before this action was instituted. James Meadors sold all the walnut timber off said land about the year 1877; and in 1887 he sold all the poplar timber on said boundary above twenty inches in diameter, as is shown by the man who cut the timber as well as by the man who hauled it. At the time this poplar timber was being removed, John S. Van Winkle, Sr., the then owner of the title under which appellants claim, was present; at first objecting, but later acquiescing in the cutting and removal thereof. Twice after this, timber in quantities was sold off the land in controversy; and that part of the land in controversy which was not cleared up seems to have been used, as timber lands held adjoining clearings are ordinarily used by people in that section. The proof for defendant further disclosed that in 1888, James Meadors caused to be made a survey of the boundary that was marked off by him in 1871, having on January 6, 1888, procured from the Whitley County Court a warrant for 200 acres of land. This survey was never carried into grant, doubtless for the reason that it was believed that the said land was already covered by the "blanket" patent under which appellants claim title. The land included in this boundary is what may be termed and described as the north face of a mountain.

Appellant introduced a deed from one M. B. Snyder to James Meadors, of date Sept. 23rd, 1889, for one hundred acres of said boundary, lying next the mountain top, including some land not within the lines of the boundary theretofore marked by James Meadors and surveyed as above mentioned. This deed excepted the minerals, the same having been reserved by Van Winkle, etc. (under whom appellants claim), in their conveyance of said land to Snyder. The deed from Van Winkle, etc., to Snyder follows the calls of the 1888 survey made by Meadors, except as to the small additional strip next the mountain top, which was not included in said survey; and the deed from Snyder to Meadors contains the same calls. There is no controversy as to this 100 acres lying next the mountain top, the land in controversy being the remaining part of the boundary marked off by James Meadors in 1871 and surveyed by him in 1888, and lying lower down on the mountain side. Appellants contend that by taking the deed from Snyder for the surface of

the upper 100 acres of the boundary, James Meadors and those claiming under him are estopped to 'deny the title under which appellants claim, as to the remainder of said boundary. We think there is no merit in this contention. James Meadors and those claiming under him could not claim ownership by adverse possession of that part of said boundry which Meadars purchased from Snyder, and in that manner avoid the reservation of mineral rights therein contained; but the taking of the deed did not estop them from claiming by adverse possession the remainder of the boundary marke'dl off in 1871 by James Meadors.

Appellants also contend that appellee failed to show that the boundary in controversy was sufficiently marked or defined to divest appellants of title. This is in fact the real issue.

The land in dispute is bounided on the northeast by a fence (appellants at the close of the evidence conceded to appellee that part of the land they sue for, which is enclosed by this fence); on the southwest and west by three calls, known on the map in the record as calls 3-4, 4-5 and 5-6. The remaining line of the land in dispute is the west line in the deed from Van Winkle to Snyder and in the deed from Snyder to Meadors, which line divides the boundary originally marked off by James Meadors; the part embraced in said ldeeds lying above this line on the mountain side; and the land in dispute herein lying below said line. So, the line above mentioned, connecting corner No. 3 to corner No. 6, is the only line necessary to be considered upon the question of the sufficiency of the marked lines as the others are conceded. The proof as to the marking of the corners anid lines mentioned is somewhat conflicting. That corner No. 3, a chestnut oak and a corner in the Snyder deed, is marked—no witness denies. One witness for appellant says that the dogwood and black-oak at corner No. 4 were found, but were not marked. Another witness for appellant says they were not found at all. Appellee's witnesses, five in number, all say that the dogwood anid black-oak were found and are plainly marked. As to corner No. 5, a stake and cucumber, appellant's witnesses, three in number, agree that a cucumber was found, but that it was not marked. Appellee's witnesses, two in number, say it was marked. For appellant, two witnesses testify that call 3-4 was not

marked; and that calls 4-5 and 5-6 were not marked. On the other hand, for appellee five witnesses state that call 3-4 is marked; two that call 4-5 is marked; anld two that call 5-6 is marked. The evidence for appellee showed a sufficient marking—that for appellants showed that the boundary was not sufficiently marked. It was, there-fore, a question for the jury to determine. If, as appel-lee's evidence tended to show, these lines were marked in the year 1871 or thereabouts it is not unaccountable that there should be some idifficulty experienced in trac-ing them at the time the survey was made herein; but, if, during the running of the statute, they were suf-ficiently marked, or the boundary sufficiently well-de-fined as to put the then claimants under the paper title on notice as to appellee's claim, that is all that was necessary; and considering the contour of the land and shape of the boundary in connection with the lines of the Snyder deed and the evidence as to marked corners, we are of the opinion that the evidence was sufficient to authorize the jury to find for appellee.

Appellants contend that appellee and his father, under whom appellee claims, had no color of title, and should, therefore, be restricted to their enclosure. But the rule is, that where the true owner is not in actual possession, an adverse claimant may enter without color of title, and extend an actual occupancy by marked lines. Fuller v. Mullins, 143 Ky., 639, 137 S. W., 243; Le Moyne v. Hays, 145 Ky., 415, 140 S. W., 552.

Appellant also complains of the action of the trial court in permitting the brothers of appellee to testify concerning the acts, statements and claims of their father; the complaint being based upon the alleged ground that should appellee lose the land in controversy, said brothers would be compelled to make contribution out of their shares of their father's estate so as to make him equal with them. The rule is that where the incom-petency of a witness to testify becomes apparent only after the examination is commenced, the objection should be made when he offers to testify as to the particular matters concerning which he is incompetent to testify. And the particular ground of such objection should be stated. 40 Cyc., 2238. This was not done by appellants. Moreover, the question presented was virtually adju-dicated by this court in Ratliff v. Daniels' Exr., 137 Ky., 55, 121 S. W., 1035, wherein it was held that those in-

terested in an estate may testify for its protection, concerning acts and statements of decedent. If, while the estate is in process of settlement, those interested therein may testify for its protection, no reason seems to exist to prevent their giving like testimony after the settlement thereof.

Appellants also insist that the trial court erred in failing to give an instruction defining "actual" and "adverse" possession, an instruction having been given using these terms. But the record discloses no request by appellant for any instruction other than to "find for defendants all of the land enclosed by the fence of the defendants" and "to find for plaintiff the remainder of the land in controversy." And having failed to ask for such instruction he can not now complain. C., N. O. & T. P. v. Cecil, 90 S. W., 585, 28 R., 830; Blue Grass Traction Co. v. Ingle, 140 Ky., 488, 131 S. W., 278.

The judgment is affirmed; the whole court sitting.