## Cole and Crane v. May.

(Decided September 24, 1919.)

### Appeal from Floyd Circuit Court.

1. Navigable Waters—Obstructions.—The owner of land through which runs a navigable stream is not himself required to remove or consent that others may remove natural obstructions in the stream which impede the use of it for the floating of logs, as a condition precedent to his right to recover damages to his land because of the negligent use of the stream for that purpose.

2. Damages—Injuries to Real Estate—Trial.—The rule requiring that the jury must say in its verdict whether wrongful injuries to real estate are temporary or permanent applies where the testimony is conflicting as to the nature of the injuries. But when the testimony shows unerringly that the injuries are permanent, the court may so treat the case by its instruction to the jury and submit to it the criterion of damages in such case, which is the difference between the market value of the land just before the injury and its market value just afterward.

3. Appeal and Error—Setting Aside Verdict.—Verdicts will not be set aside because of excessiveness unless the amount at first blush strikes the judicial mind as being superinduced by passion or prejudice on the part of the jury; but under this rule a verdict, though large, will not be set aside when the evidence is conflicting and some of it reasonably supports the verdict.

SMITH & COMBS for appellants.

A. J. MAY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee and plaintiff below, A. J. May, brought this suit in the Floyd circuit court against appellants Cole and Crane, a partnership, to recover $1,000.00 damages to plaintiff's land which he alleged he sustained through the negligence of defendants in floating logs on Beaver Creek, running through plaintiff's farm, in such a negligent way as to cause them to form a gorge and to divert the water from the regular channel of the creek,

causing it to cut a large ditch through plaintiff's farm, about 735 feet long and from 36 to 67 feet wide; that the ditch became the permanent channel of the creek, thereby destroying a considerable portion of plaintiff's farm, rendering it worthless for agricultural purposes.

The answer consisted of a general denial, and another paragraph alleged that defendants had settled with plaintiff in full for all damages sustained as a result of the wrongs complained of. Upon a trial by jury, under instructions from the court, there was a verdict in favor of plaintiff for $550.00, upon which judgment was rendered, and complaining of it the defendants prosecute this appeal.

But three objections are discussed in brief of counsel as grounds for reversal of the judgment, they being, (1) that the court erred in overruling defendants' motion for a peremptory instruction in their favor; (2) that the court misinstructed the jury, and (3) that the damages are excessive.

(1) Three reasons are urged why the peremptory instruction should have been given, they being, (a) that plaintiff failed to prove upon the trial a record title to the land after the answer had alleged that defendants "do not have sufficient knowledge or information upon which to found a belief that plaintiff is the owner of the tract of land described in the petition, or any part thereof, or any interest therein"; (b) failure of plaintiff to prove negligence on the part of defendant, and (c) that plaintiff, prior to the damage complained of, refused to permit defendants to remove from the creek a natural obstruction consisting of a tow head or island which defendants claimed was the cause of the gorge complained of.

As to point (a), conceding for the purposes of this case that the form of denial of the fact of ownership was sufficient to raise an issue upon that point, we find that plaintiff was asked if he owned the land, and he was permitted to answer in the affirmative without objection.

Defendants in cross-examining him, frequently asked him about "his land," and the testimony even went so far as to show, in some of the evidence, the persons from whom he obtained the land. He was also asked by defendants' counsel, "You own the land on both sides of the creek there"? "A. Yes, sir, I do." Defendants also required him to state who owned the land adjoining

his. Throughout the examination of witnesses for both plaintiff and defendants it was plainly conceded that plaintiff was the owner of the land, and we are convinced that defendants waived their right to demand record evidence of plaintiff's ownership.

Disposing of point (b), it is indisputably established that the quantity of logs put into the stream by defendants upon the occasion complained of overtaxed its capacity, and furthermore that they were of such length and dimensions as to prevent them being readily floated, and to cause them to hang upon the bank or other obstructions, thereby causing the gorging of the stream. From this it will be seen that there was abundant evidence to sustain the charge of negligence.

Point (c) is based upon these facts: The first of the logs lodged upon a small island or tow head but a short distance from the edge of plaintiff's farm, which tow head was a natural formation and had been in the creek for a long time. For years logs had been floated past it, and while perhaps it created slight obstruction, it is not shown to have been a permanent barrier to the use of the stream for floating purposes. Whatever the extent of its obstruction, it was a natural one, and we know of no principle of law that would require the owner to give his consent to the removal of such natural obstructions as a condition precedent to his right to recover for damages from one wrongfully using the stream in the manner we have heretofore indicated. Neither have we been cited to any authority so holding. On the contrary, in the case of Crane v. Hall, 165 Ky. 827, involving the same character of injury here complained of, with reference to the negligent gorging of the same creek here involved, this court, in answer to a similar objection, said:

"Appellees were under no duty to remove such natural objects, or to anticipate that appellants' employees would so negligently overfill the creek with logs or operate their dams as to cause the stream to overflow in the extraordinary manner shown by the evidence."

As well might it be required of the owner that he consent to the straightening of the stream through his farm before he can be permitted to recover damages for the wrongful use of the stream, for in each case his consent would be sought for the purpose of rendering the stream more adaptable and suitable for floating purposes. We

therefore conclude that the court did not err in declining to give the peremptory instruction.

(2) It is complained that the court misinstructed the jury as to the measure of damages, it being argued that the court should have instructed the jury (as offered by defendants) that if the injury was temporary to return in plaintiff's favor the value of the use of the land while the injury existed; but, if permanent, to find for him the difference in the value of the farm before the washing of the ditch and afterward, and we are cited to a number of cases from this court authorizing, under certain facts, the giving of such an instruction.

Among the cases so holding are I. C. R. R. Co. v. Haynes, 122 S. W. (Ky.) 210; L. & N. R. R. Co. v. Whitsell, 125 Ky. 433; C. & O. Ry. Co. v. Stein, 142 Ky. 515; Louisville, Henderson & St. L. Ry. Co. v. Roberts, 144 Ky. 820, and Chicago, St. Louis, etc., Ry. Co. v. Hoover, 147 Ky. 33. Other cases from this court follow the ones cited, and there can be no dispute as to the correctness of the principle of law contended for.

But it has no application where the undisputed facts show the character of injury, i. e., whether temporary or permanent. In the Haynes case, relied upon by appellant, it is said:

"There was some evidence tending to show that the water washed wide, deep gullies through appellee's land, and that the soil was carried away. If this was true, then such injury would be permanent." In the instant case the injury is much more permanent than the washing of deep gullies. It is indisputably shown to consist of the permanent changing of a natural stream, and the court was not in error in treating it as a permanent injury and in submitting to the jury as the proper criterion of plaintiff's damages the difference between the market value of his farm immediately before and immediately after the cutting of the ditch. Crane v. Hall, *supra*.

This brings us to the (3) and last contention, that the damages are excessive. The ditch complained of is shown by a surveyor to be 735 feet long and from 37 to 67 feet wide and as deep or deeper than the natural creek.

The washing of the soil contiguous to the banks of the ditch deprived plaintiff of additional ground. He claims that at least as much as two acres have been permanently destroyed, while other witnesses say that according to

their opinion not exceeding one acre has been thus damaged. At some points the new channel is as much as 250 feet from the old bed of the creek, which itself is in such condition that it cannot be cultivated. This renders it considerably inconvenient for plaintiff to get to and from the island formed by the old and the new channels. The land is shown to be exceedingly productive, and its value is fixed by various witnesses from one hundred to three hundred dollars per acre. Plaintiff and his witnesses place the difference in the market value of the farm before and after the washing of the new channel at from $500.00 to $1,000.00, while some of defendants' witnesses place it at a much less sum, two of them claiming that the ditch has actually benefited plaintiff's farm by straightening the creek.

Under this contradictory condition of the proof, it was essentially a question for the jury to reconcile the difference in the testimony of the witnesses and to arrive at a proper conclusion. The rule is that "unless the damages should be so great as to strike the mind at first blush as having been superinduced by passion or prejudice on the part of the jury, the judgment should not be reversed upon the ground that the verdict is excessive." C. & O. Ry. Co. v. Kornhoff, 167 Ky. 353; L. & N. R. R. Co. v. Ashley, 169 Ky. 330; L. & N. R. R. Co. v. Cottingham, 119 S. W. (Ky.) 751; Palmer Transfer Co. v. Long, 140 Ky. 111, and Cincinnati N. & C. Ry. Co. v. Cooke, 121 S. W. (Ky.) 956.

By the phrase "first blush," as used by the courts in this connection, is necessarily meant that immediately the judicial mind is shocked and surprised at the great disproportion of the size of the verdict to that which the evidence in the case would authorize. It has thus been stated by this court;

"The rule is that the verdict will not be set aside as excessive unless it is so grossly disproportionate as to the measure of damages, or so palpably against the evidence as to shock the conscience and raise an irresistible inference that it was influenced by passion or prejudice." Louisville Ry. Co. v. Larberg, 158 Ky. 44, and C. N. O. & T. P. Ry. Co. v. Goode, 169 Ky. 102. In the light of these cases we are unable to say that the judicial mind would have its "conscience shocked" at the size of the verdict under consideration when viewed in the light of the testimony, and we therefore conclude that we are not

authorized to set aside the verdict on the ground of its being excessive, although it must be admitted that it evinces some liberality, on the part of the jury.

Wherefore, the judgment is affirmed.