## Chesapeake & Ohio Railway Company v. McClintock-Field Company.

(Decided June 24, 1927.)

(Rehearing Denied with Modification October 11, 1927.)

### Appeal from Boyd Circuit Court.

1. Carriers.—Railroads are liable as common carriers for baggage of their passengers, which continues until baggage is ready to be delivered to owner at his destination, or until he has reasonable opportunity to receive and remove it.

2. Carriers.—After baggage has arrived at its destination, if passenger fails within reasonable time to call for it, carrier no longer retains its possession as a common carrier but as a warehouseman.

3. Carriers.—In action to recover for trunks transported by railroad as baggage, and which were destroyed by fire which burned depot and village and which started about 30 minutes after arrival of train at destination, whether reasonable time elapsed after arrival of train and before destruction of trunks in which passenger might have procured them held, under evidence, for jury.

4. Carriers.—In action to recover for destruction of baggage by fire after arrival at destination, where answer alleged that railroad could not in exercise of ordinary care have prevented destruction of the trunks after their arrival, denial thereof in reply made issue thereon.

5. Carriers.—In action for loss of trunks by fire after arrival at destination, evidence held insufficient to support verdict that carrier did not use ordinary care to prevent destruction of the trunks.

6. Carriers.—In action to recover for loss of trunks by fire within about 30 minutes after their arrival at their destination, whether the windstorm which followed and spread the fire was so ex-

traordinary in character as to amount to act of God held, under evidence, for jury.

BROWNING & REED for appellant.

DYSARD & MILLER, for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The appellee instituted suit against appellant in the Boyd circuit court, alleging that the agent of appellee, its traveling salesman, on the 21st day of April, 1924, boarded appellant's passenger train at Mita and took passage to Allen, another station on appellant's line of railway; that he paid to the conductor on the train his fare for such passage; and that at the same time he delivered to appellant for transportation to Allen the trunks in which he carried his samples, which trunks and contents were the property of appellee; that the trunks were accepted by appellant for transportation as his baggage; that the train arrived at Allen at 4 o'clock p. m., and while said trunks were still in the custody of appellant and within an hour of their arrival at Allen, two of said trunks were destroyed by a fire which burned the depot of appellant at Allen. The value of the trunks was fixed at $103.56, and the value of the contests was fixed at $816.68, making a total of $920.24, for which appellee prayed judgment.

The appellant in its answer admitted the delivery of the trunks to it and the destruction of said trunks and the contents thereof as well as the value as alleged in the petition. The answer then averred that appellee's agent arrived at the station of Allen on the same train and at the same time as said trunks, and that the trunks were ready for delivery to him immediately upon the arrival of the train; that there was reasonable time to have delivered the trunks to appellee's agent between their arrival and their destruction by fire, and that during all of said time the trunks were ready for delivery and would have been delivered to said agent if delivery had been requested; that the agent knew of the time of the arrival of the trunks, and that in the exercise of reasonable diligence he could have removed them from the depot prior to its destruction. It is then alleged that the said agent left the trunks in the depot with the intention and purpose of permitting them to remain there

until the following day. Appellant pleaded that its liability and responsibility as a common carrier of said trunks ceased and terminated prior to their destruction, and that at the time of the destruction the trunks were held by appellant as a warehouseman; that the destruction of said trunks resulted from causes beyond the control of appellant and without fault upon its part, and that it could not, in the exercise of ordinary care, have prevented the destruction of said trunks or the contents thereof. It is further alleged in another paragraph of the answer that the destruction of the trunks and their contents was caused by an act of God. A reply was filed making an issue of the allegations in the answer, and the case went to trial on the issues thus made. The jury returned a verdict for appellee for the sum of $920.24.

The testimony offered by appellant shows that the two trunks arrived at Allen about 3:50 p. m. The fire started about 4:20 p. m. At the time the fire started there was a high wind blowing, and within a few minutes the whole town was doomed. There was a man on duty at the depot for appellant until 4 o'clock, when he left, and another man came on duty immediately. Some of the things which were in the depot were moved and placed near the river, but the wind was so high and the heat so intense that the things taken from the depot were destroyed by the fire. The wind is described as a gale, and the proof shows that roofing was blown from some of the houses in Allen and carried over to the town of Dwale, more than a mile distant, and that the last-mentioned town was set on fire by reason of the high wind carrying sparks and burning fragments into it. A field of straw on the opposite side of the river from Allen was also caught in the conflagration for the same reason. The agent on duty at the depot for appellant had stored his household goods in the station getting ready to move, and they were destroyed by the fire. It is evident from the testimony that there was no way to save the trunks from destruction after the fire started. One of the witnesses stated that the fire moved so rapidly that it caught a cat which was running to escape the flames and burned it to a crisp and left it standing on all four feet in this state in front of the post office. The proof does not make it clear whether the trunks in question had been taken off of the platform and placed in the baggage room, or whether they were still on the platform when destroyed by the

fire. It is testified by both the agent who went off duty at 4 o'clock as well as the one who came on duty at the same time that there is no certainty as to whether the trunks were burned when still on the platform or when they were in the baggage room. The fire started within 20 or 25 minutes after the trunks arrived, and within 30 or 35 minutes the whole town had burned up. It is not, therefore, remarkable that the witnesses did not know what became of the trunks or where they were when they were burned.

The evidence clearly discloses that there was some question as to whether the trunks would have been delivered to the agent of appellee within a reasonable time if he had called for them. It is not entirely clear how many minutes elapsed between the arrival of the train and the starting of the fire. The witnesses all testify that the fire started about the time another train left the station, but there is no positive evidence as to how long the train carrying the trunks arrived in Allen before the other train left. George T. Roberts was the agent for appellee who had the custody of the trunks when they were placed on the train. He boarded the train at Mita on the Beaver Creek Branch and paid his fare on the train to Allen. He testified that he had two trunks, but he did not go on the train to Allen, but got off at Martin, which is six miles from Allen, and spent the night there. He admits in his testimony that he could not have called for the trunks until the next day, and that he expected them to remain in the depot over night. He stopped at Martin for the purpose of selling a bill of goods. When he left Mita he intended to go to Allen, but when the train arrived at Martin a man came on the train and wanted him to get off to sell a bill of goods.

The appellant offered no evidence, but rested its case on the evidence offered by appellee. Appellant has submitted an ably prepared brief urging a reversal of the judgment of the lower court. Counsel for appellant say that the first question for determination is whether at the time of the loss the appellant was holding the trunks as a common carrier or as a warehouseman. That is the most important question in the case and probably the only one necessary to consider. It is the settled law in this state that railroad companies are liable as common carriers for the baggage of their passengers and that such liability continues until the baggage is ready to be

delivered to the owner at his place of destination, and until he has had reasonable opportunity of receiving and removing it. Louisville, Cincinnati & Lexington Railroad Company v. Mahan, 71 Ky. (8 Bush) 184; Jeffersonville Railroad Company v. Cleveland, 65 Ky. (2 Bush) 468; Wald v. Louisville E. & St. L. R. R. Co., 92 Ky. 645, 18 S. W. 850, 13 Ky. Law Rep. 853; Kansas City, etc., R. R. Co. v. McGahey, 63 Ark. 344, 38 S. W. 659, 36 L. R. A. 781, 58 Am. St. Rep. 111; Denver & Rio Grande R. Co. v. Doyle, 58 Colo. 327, 145 P. 688, L. R. A. 1915D, 113; Roth v. Buffalo & S. L. R. Co., 34 N. Y. 548, 90 Am. Dec. 736.

After the baggage has arrived at its destination and the passenger has had a reasonable time in which to call for it, if he fails within such reasonable time to so call for it, the carrier no longer retains possession of the baggage as a common carrier, but as a warehouseman. If the two trunks in question arrived at Allen on the train and the agent of appellee did not call for the trunks within a reasonable time under all of the circumstances the railroad company became liable only as a warehouseman. It is true that the agent of appellee did not continue on the train until its arrival, but we should consider the matter the same as if he had done so. We are of the opinion that the carrier did not lose control of these two trunks immediately upon their arrival at Allen. It did not know that Roberts was not on the train or that he would not call for the trunks within a reasonable time, and without this knowledge it held the trunks as a carrier until such a reasonable time elapsed as might have enabled the agent of appellee to call for the trunks if he had left the train at Allen. Ordinarily it may take only a few minutes for a passenger to present his check and claim his baggage after he leaves the train, but there is some doubt from the evidence as to how much time elapsed between arrival of the train and the starting of the fire. After the fire started in the little town and it was realized that the town was doomed to destruction, the circumstances had so changed that the time which elapsed thereafter and before the trunks were actually destroyed should not be considered. The agent of the appellant was engaged in his duties looking towards the protection of the property of his employer after he learned that it was endangered, and the people generally were engaged in making some resistance to the on-rushing flames, which at the

time was a common enemy which it was the duty of every citizen to aid in repelling.

Under the evidence and the peculiar circumstances surrounding this entire happening, we have reached the conclusion that the lower court did not err in submitting the question to the jury as to whether a reasonable time elapsed after the arrival of the train and before the destruction of the trunks, in which the agent of appellee may have procured the trunks. The instruction on that point is as favorable as appellant could ask. It allowed the jury to consider all of the time between the arrival of the train and the destruction of the trunks when he might well have confined it to the time that elapsed between the arrival of the trunks and the breaking out of the fire. It is a matter of common knowledge that such a fire in a little village like this would throw into tumult and confusion the entire population and all those who are present.

It is true that appellee in his petition did not allege any negligence on the part of the appellant, but appellant in its answer alleged that it could not in the exercise of ordinary care have prevented the destruction of the trunks after their arrival and this was denied by reply, thus making an issue.

Another ground relied on for reversal is that appellant is not responsible for a loss caused or resulting from an act of God. It is admitted that the fire itself was not an act of God, but it is insisted that the spread of the fire by reason of the terrific windstorm was the direct and proximate cause of the destruction of the town of Allen, and that it was of such a violent and unusual nature as to bring the resulting loss within the rule that one cannot be held responsible for an act of God. The proof is not uncertain as to the violence of the wind. Among the cases relied on by appellant to support his contention that the trunks were destroyed by an act of God is Barrickman v. City of Louisville, 159 Ky. 431, 167 S. W. 151. That case is easily distinguished from the instant case. Danger signals there had been extinguished by reason of rain and a high wind. This was properly considered an act of God, as there was no intervening cause operated on by the wind which caused the extinguishment of the lights. While the proof shows that the windstorm was one of violence, there is nothing to show that it was of such unusual extent and violence as to be out of the ordi-

nary range of human experience. Whether the windstorm was so extraordinary in its character as to amount to an act of God was a question to be submitted to the jury, and the court submitted the question to the jury by instruction about which no complaint is made. The fire at least was a concurring cause which led to the destruction of the trunks, and the fire was not an act of God, and for that reason the appellant may not well insist that the court should have held that the trunks were destroyed as the result of an act of God. Cohen & Stryck v. Home Telephone Company, 179 Ky. 107, 200 S. W. 344.

The jury found for appellee under the third instruction; that is, it found that the appellant did not use ordinary care to prevent the destruction of the trunks after they arrived. There is not sufficient evidence to uphold the verdict of the jury on this point. The verdict of the jury states on its face that it was returned under this instruction. Because the verdict of the jury is not supported by the evidence on the point indicated, it cannot be upheld. If the evidence on another trial is the same, the negligence clause of the third instruction should be omitted.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.