## Beaver Dam Coal Company v. Daniel et al.

(Decided January 18, 1929.)

424

BARNES & SMITH for appellant.

KIRK & BARTLETT for. appellees.

OPINION OF THE COURT BY COMMISSIONER TINSLEY— Affirming.

The appellees are the owners of a tract of 50 acres of land in Ohio county on Ben's Lick, a branch of Rough river. Further up the branch is a large tract of land belonging to appellant, on which it is now, and from which it has been for several years past, mining and producing coal. In their petition appellees alleged that since March 1, 1927, the appellant had permitted copperas and copperas water to collect in its mine and to escape therefrom into Ben's Lick, to be carried by that branch, and to spread over 25 acres of their land, and to deposit thereon copperas and other deleterious substances, to their damage in the sum of $2,500. By its answer the appellent traversed the allegations of the petition and, in an amended answer, pleaded that appellees' predecessor in title changed the course of Ben's Lick through their land, and that appellees had permited the branch to become obstructed, and thereby caused the copperas water to spread over their land. By reply the allegations of the amended answer were put in issue, and on the trial a verdict was returned for the appellees in the sum of $500. From the judgment thereon this appeal is prosecuted.

The testimony on behalf of appellees shows that some time shortly prior to March 1, 1927, after a steady and continuous downpour of rain for a day or so, and after the 25 acres of land referred to in the petition had become inundated with water, appellee Mack Daniel went up Ben's Lick and onto the property of appellant, and there found that a large stream of water had broken through the surface of the ground at the foot of the hill on the property of appellant from a hole 3 or 3½ feet in diameter, from which the water, as he says; "gushed forth like an artesian well"; that this water was highly impregnated with copperas, was flowing into Ben's Lick and into the water which then covered this 25 acres of land; that when the waters finally receded, this 25 acres was almost completely covered with copperas, which

could be seen on the soil, vegetation, and bushes; and that it had destroyed the fertility of the land.

The testimony on behalf of the appellant showed that there were five or six old abandoned mines within the watershed of Ben's Lick branch, and that each of these old mines discharged copperas water into the branch; that the hole, from which appellee had testified the large stream of copperas water was flowing from its property, was an inch and a quarter hole that had been drilled to test the nature and character of the coal; that the copperas water flowing from that hole, as well as the water flowing from these abandoned mines, and which were not on its property, collected in the water which was standing on appellees' land by reason of the fact that the water had been backed up by Rough river, and but for this fact the copperas water would have flowed on down the branch and into the river and would not have been cast on appellees' land. It showed by a number of witnesses that they examined appellees' land shortly after the water covering it had receded, and that they did not observe any copperas on his land or on the vegetation or bushes, and showed by a number of witnesses that a single application of copperas, as in this case, is not sufficient to destroy or materially affect the fertility of the soil.

It is insisted, first, that the court should have sustained a motion for a peremptory instruction made at the conclusion of plaintiff's evidence, and again made at the conclusion of all the evidence.

The general rule in this jurisdiction is that, when there is any evidence to sustain an issue, the question and the decision of every issue of fact is exclusively for the jury. Snydor v. Arnold, 122 Ky. 557, 92 S. W. 289, 28 Ky. Law Rep. 1250; Meade v. Ashland Steele Co., 125 Ky. 114, 100 S. W. 821, 30 Ky. Law Rep. 1164; C. & O. Ry. Co. v. Conley, 136 Ky. 601, 124 S. W. 861. Inasmuch as there is evidence from a number of witnesses that the water which covered plaintiffs' land was impregnated with copperas, that a large stream of copperas water was flowing from defendant's land into the branch and onto plaintiffs' land, and that when the waters receded copperas could be seen on the land and vegetation, whether this was true and, if true, that plaintiffs' land was thereby damaged, was the very gravamen of the complaint and pure questions of fact to be determined by the

jury. The motion for a peremptory instruction, therefore, was properly overruled.

It is next insisted that the verdict is excessive. Appellees introduced four witnesses, each of whom stated he was acquainted with the land and character of the soil; they fixed its value prior to the overflow of water complained of at from $40 to $75 per acre, and its value subsequently at from no value to $20 per acre. Against this testimony, appellant showed by a number of witnesses that they saw the land immediately after the backwater receded, that neither of them observed any copperas on the land or vegetation, and that a single application of copperas or a single overflow of copperas water, as was the case here, will not destroy or even injure land; that appellees assessed their entire boundary of land and improvements for the year 1927 and for the three years previous at $1,500; and that the 25 acres claimed to have been destroyed was of the value of $20 per acre before covered by water and of the same value afterwards. It is thus seen there was a wide difference in the testimony as to the value of the land before and after it was covered by the water complained of. Under this state of case, it was necessarily a question for the jury to weigh all the evidence and determine what sum, if any, should be awarded in satisfaction of the damages claimed, if there was any injury.

In the case of Cole & Crane v. May, 185 Ky. 135, 214 S. W. 885, it is said:

"Under this contradictory condition of the proof, it was essentially a question for the jury to reconcile the difference in the testimony of the witnesses and to arrive at a proper conclusion. The rule is that—'Unless the damages should be so great as to strike the mind at first blush as having been superinduced by passion or prejudice on the part of the jury, the judgment should not be reversed upon the ground that the verdict is excesisve.' C. & O. Ry. Co. v. Kornhoff, 167 Ky. 353, 180 S. W. 523; L. & N. R. R. Co. v. Ashley, 169 Ky. 330, 183 S. W. 921, L. R. A. 1916E, 763; L. & N. R. Co. v. Cottongim, 119 S. W. 751; Palmer Transfer Co. v. Long, 140 Ky. 111, 130 S. W. 961; Cincinnati, N. & C. Ry. Co. v. Cooke, 121 S. W. 956.

"By the phrase 'first blush,' as used by the courts in this connection, is necessarily meant that

immediately the judicial mind is shocked and surprised at the great disproportion of the size of the verdict to that which the evidence in the case would authorize. It has thus been stated by this court: 'The rule is that a verdict will not be set aside as excessive, unless it is so grossly disproportionate as to the measure of damages, or so palpably against the evidence, as to shock the conscience and raise an irresistible inference that it was influenced by passion or prejudice.' Louisville Ry. Co. v. Larberg, 158 Ky. 44, 164 S. W. 346, and C., N. O. & T. P. Ry. Co. v. Goode, 169 Ky. 102, 183 S. W. 264.''

Under this rule, we are not prepared to say that the verdict in this case under the evidence adduced is so excessive as to authorize a reversal.

■ It is next argued that the court should have given instructions A, B, C, and D offered by the appellant. Instruction A is predicated upon the idea that, but for the backwater from Rough river, the copperas water would have passed down Ben's Lick and into the river and not spread over the land; that the backwater, having been caused by unusual and unprecedented rain, was such an ''Act of God'' as to relieve appellant of liability. In this appellant is in error. It is only where the ''Act of God'' is the proximate and sole cause of the injury that it affords a defense. 27 R. C. L. 40; Cohen & Stryck v. Home Telephone Co., 179 Ky. 107, 200 S. W. 344; C. & O. R. Co. v. McClintock-Field Co., 221 Ky. 142, 297 S. W. 1112. In addition, it might be observed that there is no pleading on behalf of appellant that would authorize such an instruction.

Instructions B and C are predicated upon the idea that appellee is only entitled to recover in event the copperas water and copperas were thrown upon his land by reason of the negligence of appellant. In this, too, it is in error. In 27 R. C. L. 132, it is said: ''It is the generally accepted doctrine that a riparian owner sustaining substantial injuries by reason of such an invasion of his rights may maintain an action without regard to the motive which prompts the invasion, and the pollution of a stream to the injury of a lower proprietor will not be justified by the importance of the business of the upper proprietor, to either the public or the wrongdoer, or by the fact that the latter is conducting such business with

care and in the only known practicable mode." And in Nebo Consolidated Coal & Coking Co. v. Lynch, 141 Ky. 711, 133 S. W. 736, we said: "The fact that it was prudent and careful did not relieve it from liability for the injury that was done to appellee's land by its acts. If the rule contended for by counsel for appellant was sound, then owners of land would be without remedy, although their land for agricultural purposes might be destroyed by the acts of adjacent owners, if it could be shown that these acts were performed in the usual and customary manner."

Instruction D was in effect given by the court in instruction No. 3.

■ Appellant is in no position to complain of the instructions given, because the bill of exceptions, which is contained in the transcript of evidence, shows no objection or exceptions to the instructions given. There is a reference in the order of the court to instructions Nos. 1, 2, 3, 4, and 5 given by the court, to the effect that appellant excepted thereto. However, this reference is not sufficient to identify those instructions as the instructions which are set out in the transcript of evidence and to which no objection or exception is shown. In Pennyroyal Fair Ass'n v. Hite, 195 Ky. 732, 243 S. W. 1046, we said:

"There is also some complaint directed at the instructions of the court, but it is contended by counsel for plaintiff that none of them can be considered since they were not properly made a part of the record. It is conceded that no bill of exceptions incorporating the instructions as a part of the record was filed, but it is claimed that they were made such by an order of court. An examination of the record leaves it very doubtful to our minds as to that fact. The orders of the court show that instructions numbers 1, 2 and 3 were given to the jury to which both parties objected and excepted, and that plaintiff offered instructions 'A' and 'B' to the giving of which defendant objected and its objections were sustained and the court refused to give either of them. The clerk has copied certain papers marked 1, 2 and 3, which he says were the instructions mentioned in the order of the court and likewise copied two other papers which he says were instructions 'A' and 'B,' offered by plaintiff and refused by the

court. These papers have on them a typewritten statement with the typewritten name of the presiding judge attached thereto stating which of them were given and which refused.

"There is no particular formal method by which the court may make instructions a part of the record by its order, but surely something should appear therein, other than their designation by letters or numbers, indicating that it was the purpose of the court to make them a part of the record without being incorporated in a bill of exceptions."

However, we have examined the instructions and find them not subject to the criticism directed to them, viz., that the court failed to define "ordinary overflow water," and that the instructions do not limit the recovery to five years next before the institution of the action. The objections made would be unavailing even though objection and exception to the instruction had been taken and properly shown in the bill of exceptions, because there was no request to the trial court to define "ordinary overflow water" nor to limit the recovery. Le Moyne v. Meadors, 156 Ky. 832, 162 S. W. 526; C. N. O. & T. P. Ry. Co. v. Cecil, 90 S. W. 585, 28 Ky. Law Rep. 830; Blue Grass Co. v. Ingles, 140 Ky. 488, 131 S. W. 278.

Finally, it is complained that, inasmuch as appellant's uncontradicted evidence showed that two-thirds of the copperas water which flowed into appellee's land came from the lands and mines of others, appellant is only liable for one-third of the damages sustained. In Watson v. Pyramid Oil Co., 198 Ky. 135, 248 S. W. 227, it is said: "A person polluting a watercourse is liable in damages only for his own act, and not for that of any others who may contribute to the injury. If others have contributed, his deposit must be separated by means of the best proof the nature of the case affords, and his liability ascertained accordingly."

Inasmuch as the proof showed that other mines were discharging copperas water into Ben's Lick branch which flowed through and over appellees' land, and that approximately two-thirds of the copperas water which covered appellees' land came from these other mines and land, and by instruction No. 3 the jury was told that they could not find for appellees any damage, if any, that may have been brought about by copperas water flowing from

lands other than those of appellant, if any, we must assume that the jury only found against appellant the proportion of the damage which under the evidence was caused by the copperas water flowing from appellant's land and mine.

Perceiving no error in the judgment, it is affirmed.